In the Matter of the Estate of King.

In the Matter of the Estate of Bartley J. King.[1]

Norfolk. October 5, 2009. - January 27, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Probate Court,* Attorney's fees, Costs.

This court concluded that G. L. c. 215, § 45, permits a Probate and Family
    Court judge to award attorney's fees and costs in a will contest "as justice
    and equity require," so long as the judge gives a reason grounded in equity
    for such a shift in the fees. [801-805]

This court remanded for further proceedings a motion for attorney's fees and
    costs in a will contest, where, in the circumstances of the case, the Probate
    and Family Court judge erred in failing to hold at least a limited eviden-
    tiary hearing on the question whether to award fees [805-806], and where
    the record did not support the judge's method of determining fees and
    costs [806-810].

PETITION for probate of a will filed in the Norfolk Division of
the Probate and Family Court Department on February 10, 2005.

PETITION for special administration filed in the Norfolk Divi-
sion of the Probate and Family Court Department on August 11,
2005.

COMPLAINT in equity filed in the Norfolk Division of the Probate
and Family Court Department on November 21, 2005.

After consolidation, the cases were heard by *Paula M. Carey,*
J., and a motion for attorney's fees and costs, filed on August
14, 2007, was heard by *Virginia M. Ward,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Thomas F. Maffei (Douglas Tillberg* with him) for Robert A.
King & others.

*Stephen G. Howard* for Lois Folan.

[1]Three separate actions were filed in the Probate and Family Court (Probate
Court) and were consolidated in that court prior to trial. The petition for the
probate of the will was filed on February 10, 2005; a petition for special
administration was filed on August 11, 2005; and on November 21, 2005, a
complaint in equity was filed by seven plaintiffs objecting to the probate
proceedings. The judgment on the verified application for legal fees and costs,
which is the appeal before us, was entered in all three cases.

BOTSFORD, J. An award of attorney's fees and costs under G. L. c. 215, § 45, by a judge in the Probate and Family Court is the focus of this appeal. In an earlier phase of this case, some of the children and grandchildren of the decedent, Bartley J. King (contestants), challenged the validity of the decedent's will, and separately challenged certain lifetime property transfers he made, on grounds of the decedent's mental incapacity and of undue influence. After nine days of trial before a judge (trial judge) in the Probate and Family Court (Probate Court), Lois Folan, who is a daughter of the decedent and the executor as well as the primary beneficiary of his estate, prevailed; the contestants have not appealed from that underlying judgment. A second Probate Court judge (motion judge) thereafter heard Folan's motion for attorney's fees and costs, and awarded Folan $510,321.50 in fees and $64,000 in costs, the award to run against the contestants, jointly and severally. This award is the subject of the appeal before us on our granting of the contestants' application for direct appellate review. We reject the contestants' argument that G. L. c. 215, § 45, does not authorize an award shifting attorney's fees and costs from one party to another party in the absence of evidence of bad faith or egregious litigation activities. However, we conclude that in the particular circumstances of this case, the motion judge erred in not providing the contestants with the opportunity to be heard on whether fees and costs should be awarded, and that there was error in the method used by the judge to calculate the award of fees and costs.

1. *Background.* a. *The underlying will contest.* On July 5, 2004, the decedent died. He was survived by his son, Robert King; two daughters, Folan and Helen Joyce Cushman; and fifteen grandchildren. The decedent had executed a will on August 25, 2000, naming Folan as the primary beneficiary and executor; his earlier will had been executed in 1990.[2] On February 10, 2005,

---

[2]The 1990 will and an accompanying trust provided that if the decedent's wife predeceased him (which she did), most of his estate would be left in roughly equal shares to twelve of his grandchildren. The 2000 will left most of the decedent's estate to Folan. However, the 1990 estate plan itself had left Folan the decedent's stock in H.N. King, Inc., as well as a life estate in the decedent's home. Although they contested the decedent's 2000 will, neither Robert King nor Cushman had been named as a beneficiary in the decedent's 1990 will. Cushman, although not Robert King, was named as a beneficiary in the 2000 will.

Folan filed in the Probate Court a petition for probate of the decedent's will and the appointment of an executor. A number of family members filed objections to the petition, including Robert King, Cushman, and nine of his grandchildren. In addition to this probate matter, Robert King, Cushman, and a number of the grandchildren filed a complaint in equity, seeking declaratory judgments that various estate planning documents created by the decedent were invalid. The two cases were consolidated.[3] At issue in both cases was whether the decedent had the requisite testamentary capacity to execute a new will and changes to his estate plan on August 25, 2000, and the various life insurance change of beneficiary forms on June 17, July 5, and December 15 of the same year. Also at issue, based on separate allegations by Cushman, was whether Folan had exerted undue influence over the decedent.

Both sides filed numerous pretrial motions, including motions relating to discovery, a motion or motions for preliminary injunction by the contestants, successive motions by Folan to strike the contestants' affidavits of objections, Folan's later motion for summary judgment, and numerous motions to reconsider. Close to the trial date, Folan also filed a motion for a *"Daubert-Lanigan"*[4] hearing concerning whether the testimony of the contestants' medical expert witness would be admissible. The trial judge allowed some of Folan's motions to strike affidavits of objections, denied others, and denied most of Folan's other pretrial motions, including Folan's motion for summary judgment and the *Daubert-Lanigan* motion.

Trial commenced on January 3, 2007. On that day, Cushman moved for voluntary dismissal of her objections and for leave to withdraw. The trial judge granted the motion, but indicated that Cushman might nonetheless be held liable for a portion of any award of attorney's fees that might be entered in the case at its conclusion. The remaining contestants proceeded to trial on both

---

[3]The consolidated cases were assigned to a judge in the Probate Court who heard all pretrial motions and presided over the trial (trial judge). A number of the grandchildren were dismissed from the probate case early on, and it appears that Cushman was never a party to the equity case. There are seven contestants before the court on this appeal.

[4]See *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Commonwealth* v. *Lanigan*, 419 Mass. 15 (1994).

the lack of testamentary capacity and undue influence claims. The trial lasted nine days. Sixteen witnesses and eighty exhibits were presented.

The trial judge ultimately found no credible evidence that the decedent lacked capacity on the dates he had respectively signed his will and signed the forms changing the designation of beneficiary on three different life insurance policies. Rather, the evidence offered by the contestants only supported the conclusion that the decedent was, as a result of his wife's death, temporarily depressed and suffering associated temporary psychological symptoms. The judge further found that the contestants offered no evidence at trial to support the undue influence claim beyond mere opportunity on the part of Folan to exercise undue influence — an opportunity that, the judge determined, Folan had not used. On July 12, 2007, judgments entered in the two cases, allowing the petition to probate the decedent's will dated August 25, 2000; appointing Folan as executor; dismissing, with prejudice, each of the claims in the equity complaint; and granting leave to Folan to file a motion seeking attorney's fees and costs.[5]

b. *Motion for fees and costs.* Folan filed such a motion, seeking an award of fees and costs under both G. L. c. 231, § 6F, and G. L. c. 215, § 45, in the amount of $710,321.50 in attorney's fees and $95,868.47 in costs, for a total of $806,189.97, or roughly sixty-seven per cent of the $1.2 million value of the decedent's estate.[6] Folan sought these fees and costs because, she argued, the contestants had engaged in a "two and a half year campaign to punish . . . Folan for her father's generosity," and should be ordered "to bear the financial burden that

---

[5]The trial judge stated the following in the "rationale" portion of her decision: "The Court specifically sets forth in its findings the detailed procedural history in this case as it is important in understanding the significant and outrageous amount of attorney's fees expended in bringing this case to its conclusion." In a footnote to the quoted sentence, the judge added: "The Court expresses no formal opinion on the amount of attorney's fees in using the word outrageous but merely uses the word viewing the amount of the fees in the context of the amount of the estate."

[6]Folan's motion for fees and costs had sought a slightly higher amount of attorney's fees, but it had included some estimates of future fees and costs. The figures in the text are those considered by the judge who ruled on the motion for fees and costs (motion judge).

they willfully imposed on . . . Folan by persisting in their unsubstantiated and baseless claims."

The trial judge found it necessary to assign to another judge the matter of Folan's application for fees.[7] Folan subsequently filed a motion for reconsideration that sought to have the trial judge herself hear the issues. In her order denying that motion, the trial judge stated that the only remaining issue for determination was "the amount of reasonable attorney's fees in this case. The issue whether attorney's fees should be awarded was resolved by judgment and decree after trial." Cushman moved to strike the quoted portion of this order, arguing that the trial judge had not included any findings or legal rulings regarding an award of fees in her trial decision. In response, the trial judge struck the language, ruling that the objectors "should have the opportunity to be heard on the issue of whether or not counsel fees should be awarded." She went on to note, however, that the judge who would hear the motion (motion judge) could, in that judge's discretion, limit the parties' testimony on the issue whether an award should be made. The trial judge further observed that "[e]xtensive findings of fact were entered upon which the [motion] judge may rely in determining the appropriateness and amount of an award . . . ."

The motion judge heard the motion over two days. On the first day, she denied the contestants' motion to bifurcate the hearing and separately consider (1) the issue whether fees should be awarded and (2) the reasonableness of the amount of fees incurred, stating:

> "The Court is officially familiar with the file and has reviewed the docket as well as certain pleadings, specifically including the [trial judge's] sixty-nine-page findings of fact, rulings of law, rationale and procedural history . . . . *I view this hearing as for the purposes of determining, not whether attorney's fees will be issued under the circumstances, but what attorney's fees are reasonable. I am ruling now, if it isn't implicit in anything before, that [Folan] is entitled to attorney's fees*" (emphasis added).

---

[7]The trial judge was appointed to serve as Chief Justice of the Probate Court while the application for fees and costs was pending and before it was heard.

In line with this ruling, the motion judge thereafter considered only the reasonableness of the fees. During the two days of hearings, Stephen Howard, Folan's lead trial attorney, and Brian Bixby, the contestants' expert witness, testified, and seventeen exhibits were introduced, including billing invoices detailing the work of Howard and other attorneys and paralegals from his firm who had worked on the case. In her decision on the motion, the motion judge rejected Folan's claim that fees and costs should be awarded under G. L. c. 231, § 6F,[8] finding that the contestants had acted initially in good faith and had not raised wholly insubstantial or frivolous claims. However, the motion judge concluded that "justice and equity" did "require" an award of fees under G. L. c. 215, § 45.[9] She found that the contestants had "unreasonably extended litigation" and that, notwithstanding the fact that they had initially acted in good faith, "[a]fter two years of discovery, [they] should have realized that their claims were no longer reasonable" and would "not be supported by the evidence long before trial." She also found that Folan, "pursuant to her fiduciary duty imposed by her role as executor, acted properly in defending the estate of [the decedent] from the seven contestants." The motion judge awarded Folan $510,321.50 in fees and $64,000 in costs, almost one-half the value of the decedent's estate.[10]

2. *Discussion.* a. *Are awards of attorney's fees and costs*

[8]General Laws c. 231, § 6F, provides in relevant part: "Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge . . . the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims . . . made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith."

[9]General Laws c. 215, § 45, provides: "In contested cases before a probate court or before the supreme judicial court on appeal, costs and expenses in the discretion of the court may be awarded to either party, to be paid by the other, or may be awarded to either or both parties to be paid out of the estate which is the subject of the controversy, as justice and equity may require. In any case wherein costs and expenses, or either, may be awarded hereunder to a party, they may be awarded to his counsel or may be apportioned between them. Execution may issue for costs awarded hereunder."

[10]We describe more fully the motion judge's calculation of the award of attorney's fees and costs in connection with our discussion of the parties' arguments on this issue.

*under G. L. c. 215, § 45, limited to cases involving bad faith or wrongful litigation conduct?* The contestants' first argument is that the motion judge's award of fees pursuant to G. L. c. 215, § 45 (§ 45; see note 9, *supra*), was improper because the statute only allows such an award on a finding of bad faith or egregious litigation conduct. They point to the finding of the motion judge that their claims "were likely motivated by good faith," that there were substantial issues of triable fact, and that the claims withstood numerous attempts by Folan to secure a pretrial disposition of the case. They maintain, based in part on the inclusion in § 45 of the words "as justice and equity may require," that the provision recognizes a court's inherent equitable power to shift fees in certain circumstances, but, they argue, the equitable power of a court, independent of statute, to award fees can only be exercised in "rare and egregious" cases.

The argument is not consistent with the history or text of § 45. Section 45 traces back to 1783. See St. 1783, c. 46. This court interpreted the statute as conferring on the Probate Court the power to award taxable "costs" in a proceeding within the *probate* jurisdiction of the court, a power that the Probate Court had traditionally exercised, without any specific statutory authorization, as part of its general *equity* jurisdiction over estates and trusts. See *Mulloney* v. *Barnes*, 266 Mass. 50, 53-54 (1929). The Probate Court's traditional power in such equity proceedings had also included the authority to award "expenses," including attorney's fees. In *Brown* v. *Corey*, 134 Mass. 249, 250-251 (1883), however, this court held that the statute did not permit such awards of "expenses" or fees in probate proceedings. In 1884, not long after the court's decision in *Brown* v. *Corey*, *supra*, the Legislature amended the statute specifically to add the authority to award "expenses" as well as costs, thus harmonizing, through the vehicle of the statute, the Probate Court's practice in both probate and equity proceedings. St. 1884, c. 131. See *Lewis* v. *National Shawmut Bank*, 303 Mass. 187, 189 (1939); *Boynton* v. *Tarbell*, 272 Mass. 142, 145 (1930); *Willard* v. *Lavender*, 147 Mass. 15, 16 (1888).[11]

This court has noted that § 45 is a special departure from the

---

[11]In 1931, G. L. c. 215, § 45 (§ 45), was again rewritten to add a provision authorizing the payment of attorney's fees directly to the attorney, rather than

American rule that each party is responsible for his or her own fees, but one limited to matters relating to wills, estates, and trusts. See *United Tool & Indus. Supply Co.* v. *Torrisi*, 359 Mass. 197, 197-199 (1971). See also *Fuss* v. *Fuss (No. 1)*, 372 Mass. 64, 71 (1977); *Howe* v. *Tarvezian*, 73 Mass. App. Ct. 10, 16-17 (2008), and cases cited.[12] But the fact that it is an exception does not mean that § 45 contemplates an award of costs or attorney's fees as a matter of course. Historically, the practice has been *not* to award costs and fees as a general matter in cases falling within the purview of the statute. See *Old Colony Trust Co.* v. *Third Universalist Soc'y of Cambridge*, 285 Mass. 146, 150-151 (1934) ("Costs [and 'expenses'] are not commonly taxed against a losing party under our probate practice"). Cf. *Woodbury* v. *Obear*, 7 Gray 467, 472 (1856) (will contest; on appeal, court reversed Probate Court's decree allowing will,

---

solely to a party to the case. St. 1931, c. 120. As had been the case with the 1884 statutory amendment providing for the award of "expenses" discussed in the text above, the 1931 amendment followed in the next session after a decision of this court specifically holding that § 45 did *not* authorize the payment of "expenses" (i.e., fees) directly to the attorney. See *Boynton* v. *Tarbell*, 272 Mass. 142, 144-146 (1930); *Conley* v. *Fenelon*, 266 Mass. 340, 342-345 (1929). See also *Lewis* v. *National Shawmut Bank*, 303 Mass. 187, 188-190 (1939) (discussing relationship between this court's decisions and amendments to statute in 1884 and 1931).

[12]We have also expressly recognized that in this limited context, § 45 gives the Probate Court authority that is not available to the Superior Court and the Supreme Judicial Court in the exercise of those courts' equity jurisdiction. *Lewis* v. *National Shawmut Bank*, 303 Mass. at 190. For this reason, the contestants' reliance on *Police Comm'r of Boston* v. *Gows*, 429 Mass. 14 (1999), to support their contention that § 45 limits the Probate Court's authority to award attorney's fees against a losing party to cases of "bad faith or other egregious litigation conduct" is misplaced. The *Gows* decision concerned the award of fees by a judge in the Superior Court, in the absence of an authorizing statute or rule, as a form of equitable relief because the party awarded the fees had been required to bring a contempt action to enforce an earlier judgment in her favor. *Id.* at 16. In upholding the order, this court noted the usual American rule denying recovery of attorney's fees, but pointed out that attorney's fees may nonetheless be awarded when a party's litigation conduct amounts to contempt of court or when a prevailing party is forced to bring an action to obtain compliance with an earlier court decree. *Id.* at 17-19. While the *Gows* decision supports an argument that, when exercising general equity jurisdiction, a court's authority to award attorney's fees is limited to cases of wrongful conduct, the *Gows* case bears no similarity at all to the class of proceedings in the Probate Court — proceedings involving wills, estates, or trusts — to which § 45 applies.

but awarded no costs on appeal under § 45: "There being a serious controversy, and the executor having offered the will, as he was bound to do, in the court below, and having followed it into this court on the appeal of the other party, no reason is shown for taking the case out of the general rule, which allows no costs in probate appeals"); *Osgood* v. *Breed*, 12 Mass. 525, 536 (1815) (while statute gives discretion to award costs, where probate judge has not awarded costs, court on appeal does not generally do so, unless appeal is unfounded or on "frivolous pretences"). Some judges have used bad faith, or its absence, as a touchstone in determining whether to make an award under § 45. See, e.g., *Redstone* v. *O'Connor*, 70 Mass. App. Ct. 493, 504-505 (2007) (finding no basis to disturb trial judge's discretionary declination to award attorney's fees to prevailing trustees on ground that contesting party had not acted with bad faith). This is not a mandatory standard, however.

In a number of cases the party whose conduct triggered the need for litigation has been ordered to pay the expenses arising from that litigation. See, e.g., *Hurley* v. *Noone*, 347 Mass. 182, 190 (1964) (where defendant had caused confusion by her equivocal conduct in relation to estate property, trial judge justifiably found, regardless of outcome of underlying case, that defendant should pay costs and counsel fees incurred by estate administrator in action seeking determination as to status of that property); *Strand* v. *Hubbard*, 31 Mass. App. Ct. 914, 914-915 (1991) (attorney's fees and costs awarded against party who had "torpedo[ed]" settlement to which she had previously agreed, causing litigation that would have otherwise been unnecessary).[13] Cf.

---

[13]In an earlier decision in the same case, the Appeals Court had held that, although the defendant's repudiation of the settlement had been wrong as matter of law, it was not "wholly insubstantial" or "frivolous" within the meaning of G. L. c. 231, § 6F. *Strand* v. *Hubbard*, 27 Mass. App. Ct. 684, 685-686 (1989). The court had therefore reversed the trial judge's award of attorney's fees and costs under the latter statute, but had specifically stated that the plaintiff could seek an award of fees under § 45. *Id.* at 685 n.3. *Strand* v. *Hubbard*, 31 Mass. App. Ct. 914 (1991), cited in the text above, is the appeal from the trial judge's subsequent award of attorney's fees under § 45 on remand. These two *Strand* opinions support the view that the standard for an award of fees under § 45 is substantively different from the "wholly insubstantial, frivolous and not advanced in good faith" standard of G. L. c. 231, § 6F. The contestants would essentially merge the two.

*Bright* v. *American Felt Co.*, 343 Mass. 334, 337 (1961) (although trial judge did not award attorney's fees or costs, this court, in its discretion under § 45, awarded costs in Probate Court and on appeal, but not counsel fees, where defendant improperly refused plaintiff administrator's demand for release of decedent's funds, requiring administrator to bring action). Another factor for consideration, perhaps particularly in a will contest, is whether a refusal to shift attorney's fees and costs of the prevailing party to the other side would end up distorting a valid estate plan of the decedent. See *Strand* v. *Hubbard*, 31 Mass. App. Ct. at 914-915. In other cases, the reasons for the trial judge's award of fees and costs has not been indicated, although on appeal, the court has stated that its review found no abuse of discretion in the award. See, e.g., *Greene* v. *Cronin*, 314 Mass. 336, 344-345 (1943); *Old Colony Trust Co.* v. *Third Universalist Soc'y of Cambridge*, 285 Mass. at 150.

We return to the text of § 45. The statute expressly vests "discretion [in] the court" to award, or shift, costs and fees "as justice and equity may require." These words establish a broad standard, one that certainly reaches beyond bad faith or wrongful conduct. At the same time, the words, and standard, still pay homage to the usual American rule against an automatic award of fees to the prevailing party, and require a reason, grounded in equity, why an award shifting fees should be made. But just as the standard is broad, so is the judge's degree of discretion. As our cases have made plain, an award of costs and fees by a judge in the Probate Court under § 45 "may be presumed to be right and ordinarily ought not to be disturbed." *Smith* v. *Smith*, 361 Mass. 733, 738 (1972), quoting *Old Colony Trust Co.* v. *Third Universalist Soc'y of Cambridge*, 285 Mass. at 151. See *Strand* v. *Hubbard*, 31 Mass. App. Ct. at 915, and cases cited.

b. *Was the motion judge required to hold an evidentiary hearing on whether to award attorney's fees?* The contestants' second claim is that the motion judge erred in not allowing a full hearing on the issue whether to award fees in this case. A "hearing" on an award that shifts fees under § 45 is necessary, see *Boynton* v. *Tarbell*, 272 Mass. at 146, but an evidentiary hearing may not be required, particularly where the award of fees is being considered by the judge who presided over the trial. Cf. *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 192, 198 (1986) (attorney's

fees in divorce case); *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 n.10 (1985) (same); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629-630 (1978) (award of fees in case under G. L. c. 93A; trial judge capable of noticing, via firsthand observation without holding separate evidentiary hearing, typical factors bearing on reasonableness of fees). In this case, however, the motion judge was not the trial judge, and was not writing on a clean slate. The trial judge's order of November 23, 2007, specifically stated that the contestants "should have the opportunity to be heard on the issue of whether or not counsel fees should be awarded. . . . [T]he [motion] judge may limit testimony, in her discretion, concerning the issue of whether an award of fees should be made in this case in the interest of efficiency and judicial economy." We read the last quoted sentence as indicating that the motion judge was to hold at least a limited evidentiary hearing (if requested) on the question whether to award fees. However, the record indicates that the motion judge not only took no evidence on this question, but also essentially refused to hear argument from counsel.[14] This was error, particularly in light of the fact that, notwithstanding her comments concerning the likelihood of an award of fees in this case, the trial judge herself did not make any specific findings on whether to award fees. A remand of this case for a hearing is necessary — with at least a limited evidentiary component if requested — on whether fees should be awarded.

c. *Does the record support the award of attorney's fees and costs?* The contestants, apparently assuming for argument that an award of attorney's fees and costs against them was or would be permissible, challenge the actual award made as clearly excessive and unreasonable. We agree that the motion judge's method of determining fees and costs in this case was erroneous.[15]

In arriving at the figure for the award of fees, the motion judge found that Folan should have anticipated a will contest in this case, in light of the size of the estate and the changes the

---

[14]In the background section of this opinion, see part 1.b, *supra*, we have quoted the motion judge's ruling.

[15]We consider the point because it may be that, on remand and after affording the parties an appropriate hearing, the motion judge again concludes that Folan is entitled to recover attorney's fees and costs from the contestants.

decedent made to his estate plan in 2000. Drawing from the testimony of the contestants' expert, Bixby, who had opined that a reasonable fee for a case such as this would be between $200,000 to $300,000, the motion judge further found that Folan "could have reasonably expected to spend legal fees defending the [contestants'] claims . . . in the approximate amount of $200,000.00, representing approximately fifteen percent (15%) of the estate." The judge then determined that because the contestants "were excessively zealous in litigating their case," the contestants should be jointly and severally liable for the difference between the total of fees sought by Folan and $200,000, for a total of $510,321.50 ($710,321.50 less $200,000). As for costs, the motion judge determined that Folan could reasonably have expected to pay costs that were "roughly a third of what she ultimately was caused to incur," and therefore the judge awarded costs in the amount of $64,000.[16]

The factors to be considered in determining a reasonable award of attorney's fees in a case such as this are numerous, but reasonably well settled. See *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933), where we described some of these factors:

> "In determining what is a fair and reasonable charge to be made by an attorney for his services many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured. Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services."[17]

Other important considerations are the necessity of the services, the extent to which duplicate or redundant effort was involved, and the conduct of the party seeking the award of fees. See

---

[16]One-third of $95,868.47 is roughly $32,000, which, when subtracted from Folan's total reported costs of $95,868.47, is approximately $64,000.

[17]See also *Howe* v. *Tarvezian*, 73 Mass. App. Ct. 10, 13 n.5 (2008); *Robbins* v. *Robbins*, 19 Mass. App. Ct. 538, 543 n.9 (1985).

*Chase* v. *Pevear*, 383 Mass. 350, 374 (1981); *Paone* v. *Gerrig*, 362 Mass. 757, 760-761 (1973). Cf. *Industrial Gen. Corp.* v. *Sequoia Pac. Sys. Corp.*, 849 F. Supp. 820, 827 (D. Mass. 1994) (reducing award of fees in case which "presented no novel legal issues or complex facts" and was "disturbingly overlawyered"); *Rex Lumber Co.* v. *Action Block Co.*, 29 Mass. App. Ct. 510, 521 (1990) (reducing award of fees under G. L. c. 93A because trial was on "straightforward contract case with a single issue dividing the parties").

It is essential, however, for a judge to evaluate the pertinent factors in the context of examining the attorney's description of the services actually provided, the hours spent, and the hourly rate charged. See *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 541-543. See also *Howe* v. *Tarvezian*, 73 Mass. App. Ct. at 13-14 (discussing applicability and value of lodestar method of calculating entitlement to fees). Cf. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 325-326 (1993) (award of fees under G. L. c. 151B; "[t]he lodestar approach has the advantage of producing generally consistent results from case to case. . . . A fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law"). Moreover, "where fees are paid to counsel 'who may not have been employed by those whose estates are thus diminished' they are to be awarded on 'strictly conservative principles.' " *Clymer* v. *Mayo*, 393 Mass. 754, 773 (1985), quoting *Holyoke Nat'l Bank* v. *Wilson*, 350 Mass. 223, 230 (1966).[18]

There is no indication in the motion judge's decision that she evaluated the billing records submitted by Folan's attorneys other than to note the number of attorneys and paralegals who had worked on the case, and that Folan "may have hired lawyers who[] charge at the high[er] end of hourly rates than others for similar work." In addition, while her decision expressly recognizes that "conservative principles" (*Clymer* v. *Mayo, supra*) are to govern where the fees being awarded are to be paid by the

---

[18]See *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 542, and cases cited ("To be taken into account, in any event, is the fact that we do not have a claim of counsel against their own client, but a claim against the adversary. Therefore the fees these counsel could reasonably charge to their own clients for like services must be checked against an independent, 'objective' valuation of the services they rendered in fact").

adversary, the motion judge did not actually follow a conservative approach. Rather, it appears that the judge assumed the reasonableness of the total of fees requested by Folan and her attorneys, and imposed on the contestants the entirety of the difference between what Folan's attorneys charged and what the judge found Folan should have expected to pay for the will contest that she should have anticipated. This was error.

As previously discussed, we recognize that a judge has wide discretion to determine an appropriate award of fees, and we are not in a position to substitute our judgment for that of the motion judge in this case. If, on remand, the judge determines that Folan is entitled to an award of attorney's fees and costs, the judge must consider the applicable factors that we have cited and discussed, but more particularly, the judge must undertake a more specific and searching analysis of the actual requests for fees and costs submitted than the record suggests took place, keeping in mind the need to examine the requests through a conservative lens.[19] We add the following observations for guidance.

In the present case, a total of eighteen attorneys and paralegals were representing Folan, a remarkable number especially when one takes into account the motion judge's view that the theories advanced by the contestants were not "overly complex." Even a cursory review of the billing records suggests that among all these attorneys there was duplication of effort, and a fair amount of billing for the time of two or more attorneys who were attending the same hearing. See *Grendel's Den, Inc.* v. *Larkin*, 749 F.2d 945, 952, 953-954 (1st Cir. 1984). See also *Chase* v. *Pevear*, 383 Mass. at 374 ("Particular attention should be given to the necessity for the services and to the extent of duplication

---

[19]We also note that the approach adopted by the motion judge in reviewing Folan's request for fees and costs may not have been consistent with her stated reasons for awarding fees and costs, namely, that although the contestants commenced the litigation in good faith, they should have realized after conducting discovery and before trial that the decedent had testamentary capacity and was not unduly influenced, but instead they "acted unreasonably to extend litigation." This rationale may suggest an award of fees that would focus more specifically on the fees and costs incurred by Folan in connection with the trial itself. The motion judge found, based on the billing records submitted by Folan's attorneys, that Folan incurred attorney's fees of $272,857 during the period between the pretrial conference and the end of trial — in comparison to $420,184.50 incurred during the pretrial phase of the litigation and $32,280 incurred in connection with posttrial matters.

of effort involved"); *Paone* v. *Gerrig*, 362 Mass. at 760-761. Moreover, at least some of the pretrial litigation activity, especially a number of Folan's pretrial motions (e.g., the *Daubert-Lanigan* motion) and her motions for reconsideration, reasonably could be seen as unnecessary overlawyering in a case such as this, where the decedent's entire estate was worth $1.2 million, and where on more than one occasion before trial, the trial judge made clear that she thought a trial would be necessary because of unresolved factual issues. See *Robbins* v. *Robbins*, 19 Mass. App. Ct. at 541 (noting "high probability that there had been substantial needless duplication of effort as between the two counsel, and, aside from that, substantial expenditure of time which could be attributed to extreme circumspection and zeal for completeness of preparation running beyond the requirements of the case").[20]

3. *Conclusion.* We remand this matter to the Probate and Family Court for further proceedings in accordance with this opinion.

*So ordered.*

---

[20]These observations focus on the award of attorney's fees. The requested costs also should be reviewed in order to evaluate the necessity for and the reasonableness of the specific costs charged.