Fabricant, Judith, J.
After hearing, and review of all materials submitted, including supplemental materials submitted after the hearing with leave, the Court concludes as follows.
This class action claimed breach of fiduciary duty by the defendants, directors of MASSBANK Corporation, in connection with a proxy statement regarding a so-called “going private" transaction. The essence of the claim was that the disclosures the company had provided were insufficient to enable its shareholders to make a fully informed decision as to how to vote on the transaction. After the filing of the complaint, and the conduct of some discovery, the parties reached an agreement under which the company would make certain additional disclosures. The company did so, and the transaction was approved and has been consummated.
Counsel thereafter negotiated a final settlement, subject to court approval. The settlement agreement provided no relief to class members beyond the additional disclosures already made. The settlement agreement further provided that defendants would pay plaintiffs’ attorneys fees and expenses in an amount to be determined by the Court, and that defendants would not oppose an application for fees and expenses in an amount up to $352,157.00.[1] Counsel appeared before the Court on March 4, 2010, for final approval of the settlement agreement, and for hearing on the fee application. The Court at that time approved the settlement agreement and took the fee application under advisement.
Plaintiffs seek fees and expenses in the total amount of $352,157, the amount that defendants have agreed not to oppose. In support of that request, plaintiffs have submitted materials providing the following information. Personnel of the Little Rock, Arkansas, firm of Carney, Williams, Bates, Bozeman & Pulliam, PLLC, including two partners, three associates, a paralegal, and an accountant,[2] spent a total of 690.20 hours, at rates ranging from $100 to $650 per hour. In addition, David Pastor, who served as local counsel, spent 25.50 hours, at an hourly rate of $525.00. Plaintiffs have not provided information to indicate how those hours were spent, beyond the general description of the steps undertaken set forth supra. The Carney Williams firm incurred expenses, including charges for out-of-pocket costs and for certain in-house services, totaling $20,427.98.
The declaration of Attorney Pulliam refers to the hourly rates sought as counsel’s “regular hourly rates.” At the hearing, however, counsel acknowledged that the Carney Williams firm has no paying clients; its business consists entirely of shareholder class action suits similar to this case, and it receives payment only through court-approved applications for attorneys fees and expenses to be paid either by opposing parties or from a common fund. Thus, the hourly rates claimed are “regular” only in the sense that these are the rates the firm regularly seeks in its fee applications.[3] Plaintiffs have also provided a firm resume, describing the experience of the firm and its personnel in cases of this type; copies of materials in business publications reflecting the reputation and general success of the firm in such litigation; and copies of certain court decisions approving fee applications based on the same or similar rates in certain other cases, some involving this firm, along with summaries of rates claimed by other plaintiffs’ firms and approved in certain other cases.[4] In addition, plaintiffs have submitted an affidavit from plaintiffs financial expert, attesting to the value of the additional disclosures to the members of the plaintiff class. No information has been provided regarding market rates in Little Rock.
This submission — like similar submissions the Court has received in similar cases — places the Court in a very difficult position. The defendants’ agreement not to oppose the request means that the Court does not have the benefit of an adversarial process; no one is in a position to, or has any incentive to, identify any weaknesses in the fee application or present any information that might cast it in a light different from that offered by the plaintiffs. Nevertheless, the Court does not view itself as a rubber stamp; the Court’s obligation, as the Court understands it, is to conduct an independent evaluation of the reasonableness of the amounts sought.[5]
The basic test of reasonableness for attorneys fees was established long ago in Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1934): The Court must consider “the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of the money or the value of the property affected by the controversy, and the results obtained.” See In the Matter of the Estate of King, 455 Mass. 796, 807 (2010); Haddad v. Wal-Mart Stores, Inc. (No. 2), 455 Mass. 1024, 1025 (2010), and cases cited.
Here, the Court is satisfied that the hourly rate claimed by Attorney Pastor is consistent with rates charged by attorneys of similar experience and reputation in the Boston area for sophisticated commercial litigation. The Court lacks any detailed information about the tasks he performed, but the total number of hours he claims appears consistent with the tasks that the Court would expect of local counsel in a matter handled primarily by out-of-state counsel, with the limited court appearances involved here.
As to the Carney Williams firm, the rates it seeks are at the upper end of rates this Court has observed for the most experienced and prominent commercial *577 litigators in major firms in Boston. The materials before the Court indicate that the firm has achieved success and some renown in this type of litigation, and that it has succeeded in obtaining fee awards at the rates it claims in other cases. Beyond that, the Court has little basis to determine how the rates claimed compare to any relevant market.
As to the number of hours spent by firm personnel, the information submitted provides veiy little basis for evaluation. Based on the affidavit submitted, in the absence of any contrary information, the Court accepts as true that the firm’s personnel spent the hours claimed, but the total number of hours claimed appears extremely high in comparison to fee claims the Court has observed in other cases that have involved considerably more litigation activity. Without further information about the tasks performed and time spent on any particular tasks, the Court has little basis to evaluate the reasonableness of the time spent, either overall or by particular personnel.[6]
The other factors to be considered are the amount and importance of the matter involved, the amount of money or the value of the property affected by the controversy, and the results obtained. These factors are closely related. Here, the transaction was large, but the result obtained for the plaintiff class is limited to disclosure. Neither the price nor any other terms of the transaction changed, and no suggestion appears that the additional disclosure should have led class members to vote against the transaction, or that it actually influenced any votes. Disclosure in securities transactions is certainly valuable and important; full and accurate disclosure protects investors and promotes the overall health of the securities markets. That said, however, the information submitted provides little basis for the Court to evaluate the reasonableness of the amount of fees claimed in relation to the value achieved for the class.[7]
The burden is on the plaintiffs to show the reasonableness of the fees claimed. Plaintiffs have not done so. Clearly, the plaintiffs are entitled to some fees. The inadequacy of the plaintiffs’ showing leaves the Court to determine an amount based on its general familiarity with the rates commonly charged for comparable work, and the time likely necessary for the limited litigation activity involved in this case. On that basis, the Court will award attorneys fees in the amount of $150,000. The Court will also award $17,947.23 in expenses, for a total of $167,947.23.[8]
CONCLUSION AND ORDER
For the reasons stated, the Plaintiffs Application for Attorneys Fees and Expenses is ALLOWED IN PART. The Court awards fees and expenses to plaintiffs’ counsel in the total amount of $167,947.23.

As the settlement includes no monetary relief for the plaintiff class, the fee award will have no direct effect on the class. Its effect, in substance, will be to increase the transaction costs to the buyer. The defendants’ own attorneys fees and costs of the litigation have the same effect. The Court is not in a position to evaluate what effect, if any, the prospect of such increased transaction costs might have had on the amount the buyer was willing to offer in this instance, on the value of the buyer to its shareholders after the transaction, or on the amounts that buyers generally might be willing to offer to shareholders in similar transactions.

Counsel’s submission identifies one individual, at an hourly rate of $150, with a designation “(C.),” which does not correspond to any of the categories appearing in the legend on the summary page. The firm resume submitted identifies that person as a forensic accountant.

The Court is familiar with Mr. Pastor and his firm from previous cases, and is aware that he and the firm regularly engage in work similar to that involved here, as well as consumer class action litigation, and receive payment in the same manner sought here. The Court is not aware of whether he or his firm also have clients who voluntarily pay for services at the hourly rate claimed.

To the extent the Court can determine from the materials submitted, it appears that the cases relied on involved settlements providing monetary relief to the plaintiff class, so that fee applications could be considered in relation to the amount obtained for the class. See, e.g., In re Nationwide Financial Services Litigation, no. 2:08-CV-00249 (U.S.D.C. S.D.Ohio 2009).

Plaintiffs point to defendants’ agreement as evidence of the reasonableness of the fees sought. The Court does not interpret it that way. A party’s decision to settle litigation generally reflects more a cost-benefit analysis than any perception of the reasonableness of the other side’s position; a defendant compares the likely cost of continuing the litigation to judgment, along with the risk of an adverse judgment, with the cost of settlement, and chooses the more economical course.

The Court notes, for example, that the largest number of hours, 389.90, was spent by Attorney Pulliam, a partner charging $600 per hour. The information provided gives the Court little basis to determine whether some of the tasks performed in that time could have been performed at a lower rate. At the hearing, counsel emphasized the necessity of extensive review of complex financial information. The Court notes, however, that the firm’s forensic accountant spent only 24.60 hours, at an hourly rate of $150.00, and that the amount the firm claims for “Expert/Consult/Investigation” is $ 12,913.75. This information raises, but does not answer, the question whether, if part of Attorney Pulliam’s time was spent on review of financial materials, that function might have been delegated to financial professionals or to less experienced attorneys at lower cost.

Indeed, if the Court were to approve the application as submitted, a rational observer might perceive that the benefit of the litigation accrues more to lawyers than to clients. That perception would tend to undermine public respect for the legal profession.

The Court has subtracted from the expenses claimed amounts for “telephone/facsimile,” “in-house photocopying/printing,” “postage/overnight/courier,” and “legal research,” because, in the Court’s view, these items are in the nature of law firm overhead, and constitute part of the justification for hourly rates at the level sought. The Court has reduced by half the amount claimed for “travel/food/misc.,” because no information has been provided from which to evaluate the reasonableness of the charge. One-half of the amount claimed seems generally consistent with the likely cost of a single trip to Boston from Little Rock for one lawyer.