NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1128

LINDA S. RORIE, personal representative,[1]

vs.

JEANNE MCCLAIN-PETERSON & others[2]; Edward A. McClain, Jr., third-party defendant.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Linda S. Rorie, commenced this action as personal representative of the estate of her husband, Edward Arthur McClain (decedent). Rorie alleged that three of the decedent's siblings, including defendants Jeanne McClain-Peterson and Scott McClain,[3] conspired to name themselves as the beneficiaries of the decedent's deferred annuity contract with defendant AXA Equitable Life Insurance Company (AXA).[4] A judge

---

[1] Of the estate of Edward Arthur McClain.

[2] Scott McClain, AXA Equitable Life Insurance Company, and Vista Verde Corporation.

[3] This appeal involves several members of the McClain family. To avoid confusion, we refer to the members of the McClain family by their first names.

[4] Rorie also named Vista Verde Corporation (Vista Verde) as a defendant. The parties stipulated to a dismissal of Vista

of the Probate and Family Court concluded that Rorie did not have standing and ordered that she pay attorney's fees to Jeanne and Scott.  Rorie timely appeals from the resulting judgment of dismissal; amended judgment on cross claim; orders entered May 5, 2022, on Rorie's motions to strike and for rehearing and to alter and amend the judgments; and orders on attorney's fees entered April 7, 2021, and March 11, 2022.  We agree that Rorie does not have standing as personal representative of the estate, and we discern no abuse of discretion in the decision to award attorney's fees.  Accordingly, we affirm.

Background.  The following facts are undisputed for purposes of this appeal.  On June 10, 2005, AXA issued a deferred annuity contract (policy or AXA policy) to the decedent for coverage on his life.  The decedent named his son, Edward A. McClain, Jr., as the sole beneficiary.[5]  On September 7, 2013, the decedent executed a power of attorney in favor of a brother, Neil McClain.  The decedent died on November 11, 2013.  The following day, Neil submitted a change of beneficiary form to AXA that he had executed in October under his power of attorney

_____

Verde, and this appeal does not raise any issues concerning Vista Verde.

[5] Edward, Jr., was brought into this lawsuit through AXA, which sought interpleader relief and named Edward, Jr., as a third-party defendant.

2

and that named himself, Jeanne, and Scott as the beneficiaries of the AXA policy.

In 2013, Rorie commenced a Superior Court action in her individual capacity against Neil, Jeanne, and Scott. In part, Rorie claimed that the decedent lacked the capacity to give Neil the power of attorney and, through fraud or undue influence, his siblings induced the decedent to change his power of attorney and designate new beneficiaries for the AXA policy. The Superior Court action was dismissed without prejudice on July 5, 2017, when Rorie failed to comply with a discovery order.

Then, in 2017, Neil and his wife filed for bankruptcy. In the bankruptcy proceeding, Rorie filed a claim in her individual capacity and as personal representative of the estate. Rorie argued that the change of beneficiary form was not effective until submitted to AXA, that Neil's power of attorney ended on the decedent's death, and that Neil had no authority to submit the change of beneficiary form to AXA the day after the decedent died. Rorie requested a finding that the change of beneficiary form was null and void. Neil and his wife stipulated that they had no defense to the requested finding. On or around July 22, 2019, a judgment entered in the bankruptcy proceeding declaring that Neil and his wife had "no interest" in the AXA policy and that the change of beneficiary form was "null and void."

Also in 2017, Rorie commenced the underlying Probate and Family Court action as personal representative of the estate.[6] In part, Rorie again asserted the decedent's lack of capacity to contract and claimed fraud or undue influence in the change of beneficiaries for the AXA policy. In an order entered October 15, 2020, a Probate and Family Court judge concluded that Rorie, as personal representative, did not have standing. Later, the judge awarded Jeanne and Scott attorney's fees. Separately, on November 30, 2020, Jeanne, Scott, and Edward, Jr., filed a settlement agreement resolving the claims among themselves by splitting the proceeds of the AXA policy, two-thirds to Jeanne and Scott, jointly, and one-third to Edward, Jr.[7]

Discussion. 1. Standing. We first address whether Rorie, as personal representative, has standing.[8] "A plaintiff must

_____

[6] Rorie originally named Neil and his wife as defendants but, after learning of their bankruptcy proceeding, filed an amended complaint that did not name them as defendants.

[7] In a motion requesting to supplement the record, Jeanne and Scott assert that they and Edward, Jr., entered into the settlement agreement on or around June 19, 2020. While nothing in our decision turns on this date, we note that the settlement agreement was reached almost one year after Neil stipulated in the bankruptcy proceeding that the change of beneficiary form was null and void.

[8] In her notice of appeal and appellate brief, Rorie states that she is appealing in her individual capacity and as personal representative of the estate. Because Rorie brought the underlying complaint as personal representative of the estate, we are limited to considering whether Rorie has standing to pursue the claims she brought in that capacity.

4

have standing, a definite interest in the matters in contention in the sense that [her] rights will be significantly affected by a resolution of the contested point."  Bonan v. Boston, 398 Mass. 315, 320 (1986).  Where "standing in this case [is a] question[] of law, our review is de novo."  Caputo v. Moulton, 102 Mass. App. Ct. 251, 253 (2023).[9]

Rorie maintains that, as personal representative, she has standing to enforce any contracts entered into by the decedent. The cases she cites do not stand for that broad proposition. Bettencourt v. Bettencourt, 362 Mass. 1, 11 (1972), held that the executor of an estate could bring an action to determine whether the decedent had entered into a reciprocal will.  Tyler v. Treasurer & Receiver Gen., 226 Mass. 306, 308 (1917), did not address whether a personal representative had standing to enforce a contract, and instead addressed whether the beneficiary of a contract had standing to enforce the contract.[10]

---

[9] Rorie contends that Jeanne and Scott are the ones who lack standing.  However, Jeanne and Scott have a "definite interest in the matters in contention," Bonan, 398 Mass. at 320, where they were arguably named beneficiaries of the AXA policy.

[10] Rorie also maintains that the decedent could have brought several of the claims in this action, that they survived his death, and that she, as personal representative, has standing to pursue them.  See Kraft Power Corp. v. Merrill, 464 Mass. 145, 149-150 (2013).  Based on the record before us, Rorie did not raise this argument below, and it is therefore waived.  See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 86 (2014).

Alternatively, Rorie asserts that, as personal representative, she has standing because the estate has an economic interest in the proceeds of the AXA policy. In particular, Rorie asserts that if the change of beneficiary form were valid, (1) it would create separate interests in each beneficiary individually and (2) Neil's forfeited interest would revert to the estate. See Kruger v. John Hancock Mut. Life Ins. Co., 298 Mass. 124, 128-129 (1937). To reach this conclusion, Rorie ignores the policy language (discussed below) and relies on the proposition that "[i]f under a life insurance policy taken out by the insured a beneficiary's interest is terminated by his death before the death of the insured and no other beneficiary is designated to take that interest, it reverts as a lapsed trust to the legal representative of the insured." Id. at 129.[11]

We may assume for purposes of our review that the change of beneficiary form, if valid, created a separate interest in each beneficiary individually. However, it does not follow that Neil's lapsed interest reverted to the estate. The cases on which Rorie relies involved policies that did not designate

---

[11] If, instead, the change of beneficiary "create[d] a joint interest in the [three] named beneficiaries with the right in the survivor[s] to take the whole of the proceeds," Kruger, 298 Mass. at 128, Neil's forfeited interest would go to Jeanne and Scott.

6

another beneficiary to take the interest other than the estate. See _Taylor_ v. _Sanderson_, 330 Mass. 616, 620-621 (1953); _Kruger_, 298 Mass. at 129; _Hersam_ v. _Aetna Life Ins. Co._, 225 Mass. 425, 427 (1917). Here, in contrast, the AXA policy included the following provisions, which detailed how "[a]ny part of a death benefit payable for which there [was] no named Beneficiary living at the Annuitant's death" would be paid.

> "Any part of a death benefit payable for which there is no named Beneficiary living at the Annuitant's death will be payable in a single sum to the surviving Owner. If there is no surviving Owner, payment will be made to the Owner's surviving spouse. If there is no surviving spouse, payments will be made to the Owner's surviving children in equal shares. If there are no surviving children, then payment will be made to the Owner's estate."

The decedent was the annuitant and the sole owner of the policy. When he died, there were no other owners of the policy. In these circumstances, the policy provided that payment would "be made to the Owner's surviving spouse," Rorie. Thus, even if Neil had a separate interest in the policy, that interest did not revert to the estate, and Rorie has not shown how the estate has a "definite interest in the matters in contention." _Bonan_, 398 Mass. at 320.

2. _Attorney's fees_. We next address whether the Probate and Family Court judge abused her discretion in awarding attorney's fees under G. L. c. 215, § 45, which "vests 'discretion [in] the court' to award, or shift, costs and fees

'as justice and equity may require.'" Matter of the Estate of King, 455 Mass. 796, 805 (2010), quoting G. L. c. 215, § 45. "These words establish a broad standard," and "so is the judge's degree of discretion." Matter of the Estate of King, supra. Nonetheless, the standard still "require[s] a reason, grounded in equity, why an award shifting fees should be made." Id. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The Probate and Family Court judge who awarded attorney's fees relied in large part on what happened in the prior Superior Court action. She considered that the Superior Court action was dismissed for failure to comply with a discovery order and that Rorie's then counsel testified that the dismissal did not matter because Rorie, as personal representative, could seek the same relief in the Probate and Family Court. The Probate and Family Court judge further noted that, in denying a motion to vacate, a Superior Court judge found that "the exhibits submitted to the court strongly suggest[ed] that Rorie lack[ed] a meritorious claim for fraud or undue influence." Finally, the Probate and Family Court judge who awarded attorney's fees noted that the

Superior Court judge's warning "should have been a strong cautionary note to [Rorie] about the risk of pursuing her strategy to file in Probate Court" and that the effect of Rorie's strategy "was to require [Jeanne and Scott] to bear legal fees twice." However, the Probate and Family Court judge also specifically found that Rorie did not "act[] frivolously."

The Probate and Family Court judge's analysis shows that she carefully considered the factors relevant to awarding attorney's fees, including that Rorie "provoked a needless round of litigation." Strand v. Hubbard, 31 Mass. App. Ct. 914, 914 (1991). Given the broad language of G. L. c. 215, § 45, we

discern no abuse of discretion in the judge's decision to award attorney's fees under that statute.[12]

> The judgment of dismissal; amended judgment on cross claim; orders entered May 5, 2022, on Rorie's motions to strike and for rehearing and to alter and amend the judgments; and orders on attorney's fees entered April 7, 2021, and March 11, 2022, are affirmed.

By the Court (Hand, Hershfang & Brennan, JJ.[13]),

*Paul Little*

Assistant Clerk

Entered:   March 20, 2024.

---

[12] The requests by Rorie and by Jeanne and Scott, for awards of appellate costs and attorney's fees, are denied.

[13] The panelists are listed in order of seniority.