GARY A. PALOCHKO vs. JOHN REIS & another.[1]

No. 05-P-729.

Barnstable. April 3, 2006. - August 11, 2006.

Present: GREENBERG, DUFFLY, & KAFKER, JJ.

*Consumer Protection Act,* Businessman's claim, Unfair or deceptive act, At-
torney's fees. *Administrative Law,* Regulations. *Practice, Civil,* Costs, At-
torney's fees. *Damages,* Mitigation.

A trial court judge did not abuse his discretion in dismissing a claim brought
by a landowner against a contractor under G. L. c. 93A, § 11, seeking
damages for a spill from an oil tank located on the property in question,
where there was evidence in the record that supported the judge's finding
and ultimate conclusion that the landowner's own actions broke the chain
of causation. [105-108]
The prevailing plaintiff in a suit under G. L. c. 21E was entitled to an award
of legal fees and costs [108], and the defendant's liability could not be
reduced by the amount of compensation received by the plaintiff as a
settlement or reimbursement from his insurer [108].

CIVIL ACTION commenced in the Superior Court Department on
September 9, 1997.

The case was tried before *Robert A. Mulligan,* J.; entry of
separate and final judgment was ordered by *John M. Xifaras,* J.;
a motion for summary judgment was heard by *Gerald F.
O'Neill, Jr.,* J.; and a motion to alter or amend judgment was
heard by *Gary A. Nickerson,* J.

*Frank J. Teague* for the plaintiff.
*E. James Veara* for the defendants.

GREENBERG, J. Upon a jury verdict, a judgment in the amount
of $18,118.79 was entered in favor of the plaintiff, Gary A.
Palochko. That sum reflects a Superior Court jury's special
verdict under a G. L. c. 21E, § 4, claim, plus costs and at-
torney's fees pursuant to c. 21E, § 4A(*d*)(2), against the

[1]John Reis, Inc., doing business as The Golden Hammer.

defendants, John Reis and John Reis, Inc. The judge who reserved the G. L. c. 93A, § 11, claim, dismissed that claim. Palochko appeals the judge's dismissal, and Reis cross-appeals the award of litigation costs and attorney's fees in favor of Palochko.

1. *Background.* Reis is a contractor who at all material times was engaged in the reshingling of a ten-room commercial guesthouse in Provincetown, owned and operated by Palochko. To that end, in October, 1995, he entered into a contract with Palochko for the performance of the work that would require, among other things, the removal of old shingles and the installation of new ones on all sides of the house. The work went well until Reis's employees reached the rear of the house, where Palochko's 275-gallon oil tank sat. Though the evidence was disputed, both the jury and the judge apparently found that Reis allowed his workers to move the tank far enough away from the house to complete the job, after which they pushed the tank back to its original position. In particular, the judge found as follows. Because the tank, which contained some oil, was too heavy to lift, two members of Reis's crew "slid the tank sideways so that it was an additional eight to ten inches away from the exterior rear wall of the house." The workers were able to slide the tank due to the relatively low volume of oil in the tank and the fact that the tank was connected to the house by a flexible accordion pipe. "After completing the work behind the tank, the crew slid it back into its original position, with the legs on the concrete pads where they had formerly rested." Reis "was also aware of the rusted condition of the legs supporting the tank which would have made them more susceptible to damage when the tank was moved."[2]

All the work on the house was completed in mid-December, 1995. From that time to February 21, 1996, when the oil spill at issue in this case occurred, Palochko's automatic oil delivery supplier, Cape Cod Oil Co., made three separate deliveries

---

[2] The judge found that prior to acquiring the house, a building inspector reported to Palochko that there was "settling and irregularity of the pads under the legs of the fuel tank and its uneven base." The building inspector "recommended reestablishing a firm base for the legs of the tank and the construction of a berm around the tank."

without incident. On the day in question, the tank fell over. About forty gallons of oil were determined by the Massachusetts Department of Environmental Protection to have leaked out of the overturned tank onto the ground.

Palochko was informed that, as owner of the property, he was strictly liable under G. L. c. 21E and the Massachusetts Contingency Plan, 310 Code Mass. Regs. §§ 40.0000 (1995), for response and clean-up costs. In due course, Palochko retained environmental experts and eventually incurred clean-up costs of $28,075. He was also obligated to pay legal costs related to the spill of over $8,100. He did receive $12,000 in clean-up contribution costs, which was deducted from the jury award, from M.J.T. Enterprises, Inc., the oil supplier, after the commencement of this action as settlement of his claims against it. The total was then reduced by sixty percent pursuant to the jury's determination of Palochko's responsibility for the spill. An additional award of $848.88 was added pursuant to G. L. c. 21E, § 4A(d)(2), because the judge determined that the defendants did not participate in dispute resolution negotiations in good faith.

2. *Claims under G. L. c. 93A.* Palochko's common-law negligence and statutory G. L. c. 21E claims were accompanied by a parallel count under G. L. c. 93A, based on the same facts that alleged unfair and deceptive conduct by Reis. In particular, Palochko alleged that Reis wilfully and knowingly violated c. 93A by failing to inform him, in compliance with State regulations, that it would be necessary to move the oil tank by a licensed contractor, that Reis and his employees, in fact, were not licensed to perform this type of work, and that a permit issued by the fire chief was required before such work could be undertaken. See 527 Code Mass. Regs. § 4.03(1)(b), (d) & § 4.00 Form 1 (1995). The jury answered special verdict questions on negligence (count VIII) and clean-up costs under G. L. c. 21E, § 4 (count III). On negligence, the jury found that Palochko was sixty percent responsible and that Reis was forty percent responsible. This determination mandated a verdict for Reis under G. L. c. 231, § 85, the comparative negligence statute. However, the jury found that Reis was a "person liable" under G. L. c. 21E, § 5, and awarded damages for the spill to Palochko under that statute.

Although the jury determined that Palochko's negligence claim was barred because he was more than fifty percent at fault (presumably for ignoring a building inspector's report concerning the defects of the oil tank), G. L. c. 93A, § 11, affords businessmen certain remedies "that elude conventional definitions and categories." *Doliner* v. *Brown*, 21 Mass. App. Ct. 692, 697 (1986). In the course of the *Doliner* opinion, we cautioned that the statute ought not to be read as "punish[ing] every departure from 'the punctilio of an honor the most sensitive,' (*Meinhard* v. *Salmon*, 249 N.Y. 458, 464 [1928])" while, nonetheless, in certain cases enforcing "standards of behavior measurably higher than perfidy." *Doliner* v. *Brown*, *supra* at 697-698.

A violation of a regulation may "constitute a G. L. c. 93A violation when the regulation is intended to protect the health, safety, or welfare and when the violation of the regulation is unfair and deceptive." 940 Code Mass. Regs. § 3.16(3) (1993). See *Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.*, 418 Mass. 737, 745 (1994). As to Reis, the facts as found by the trial judge do not describe conduct that a business person would consider reprehensible, and therefore, those facts do not constitute behavior that, in context, would register as an unfair and deceptive act. Although, on appeal, Palochko contends that the unlawful moving of the tank was "part of the unfair and deceptive pattern of conduct," the judge correctly ruled that, in the circumstances, transgressing the regulation "is not in and of itself, an unfair or deceptive act."

The judge acknowledged that Reis's failure to inform him of the regulatory requirement could have been unfair and deceptive. Failure to disclose a regulation may be deceptive if it causes a person to act differently than he or she would otherwise have done. See *Grossman* v. *Waltham Chem. Co.*, 14 Mass. App. Ct. 932, 933 (1982). The Supreme Judicial Court has stated that the focus of determining whether an act is unfair under G. L. c. 93A should be on "the nature of challenged conduct and on the purpose and effect of that conduct" as well as the "other facts" of the case. *Massachusetts Employers Ins. Exch.* v. *Propac-Mass., Inc.*, 420 Mass. 39, 42, 43 (1995).

Here, the judge found that Palochko, himself, violated another

section of the regulatory scheme, 527 Code Mass. Regs. § 9.07(A)(2) (1995), which requires "[e]very tank . . . be supported by a foundation capable of supporting the tank," and § 9.07(B)(2)(b), which mandates that "[t]he tank owner shall ensure that all tanks and appurtenances . . . are secure, operable and without excessive wear." As to the critical break in the chain of causation, the judge noted that the jury determined that Palochko was himself sixty percent negligent and that his negligence combined with that of the defendant to cause the spill. Further, the judge determined that, because Palochko had not acted on his home inspector's report, see note 2, *supra*, when he purchased the property, the judge could not infer that Palochko would have required Reis to adhere to regulatory requirements, that in pertinent part mandates that all burner equipment cannot be installed or *altered* unless (1) the person doing the work holds a license or an oil burner technician certificate and (2) the person first receives a permit from the city or town fire chief. 527 Code Mass. Regs. § 4.03(1)(b), (d) and § 4.00 Form 1 (1995).

"Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a G. L. c. 93A violation is a question of law." *Diamond Crystal Brands, Inc.* v. *Backleaf, LLC*, 60 Mass. App. Ct. 502, 507 (2004), quoting from *R.W. Granger & Sons* v. *J & S Insulation, Inc.*, 435 Mass. 66, 73 (2001). We think it would defeat commercial expectations and foment litigation to impose c. 93A, § 11, liability in the present case because the parties are commercially sophisticated. See *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 616 (1983); *Teitelbaum* v. *Hallmark Cards Inc.*, 25 Mass. App. Ct. 555, 562 (1988). Contrast *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 706-714 (1990); *International Totalizing Sys., Inc.* v. *PepsiCo*, 29 Mass. App. Ct. 424, 435-438 (1990).

In sum, there was evidence in the record that supports the judge's finding and ultimate conclusion that Palochko knew of the danger of the tank toppling over from the home inspector's report and that his failure to act was one of the causes of the oil spill. It cannot be gainsaid that the risk was enhanced by Reis's

failure to warn Palochko that his workers were not licensed. However, to the extent that in resolving the conflict, the judge chose to believe that Palochko would have authorized Reis to proceed without a license, we find no abuse of discretion. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 27, cert. denied, 522 U.S. 1015 (1997).

3. *Miscellaneous issues.* We discuss briefly two issues raised in the cross appeal. Reis, taking exception to the judge's finding (based on the jury's special verdict) that his employees moved the oil tank, contends that, as a result of Palochko's negligence in failing to repair or replace the tank, he was partially at fault for the spill and, therefore, cannot be awarded litigation costs and attorney's fees under G. L. c. 21E, § 4A(*d*)(2). That statute permits an award of attorney's fees and costs in any of three situations, see *Buddy's, Inc.* v. *Saugus*, 62 Mass. App. Ct. 256, 259-260 (2004), one of which the judge found applicable here: "[Reis] did not participate in negotiations or dispute resolution in good faith." Giving short shrift to Reis's assertion that the work performed by his employees in moving the tank did not contribute to the spill, the judge correctly viewed Reis's stonewalling the negotiation or dispute resolution process as evidence of bad faith, causing unnecessary delay and needless expense in the cost of litigation. See *Hahn* v. *Planning Bd. of Stoughton*, 403 Mass. 332, 337 (1988). Accordingly, Palochko is entitled to an award of legal fees and costs so long as liability is reasonably clear or, as here, is established at trial.

Reis also claims that any award of damages to Palochko should be offset by the same amount he received by way of a settlement or reimbursement from his insurer. There is nothing to this argument. "As a general rule, a tortfeasor's liability to an injured person shall not be reduced by the amount of compensation received by the injured person pursuant to an insurance policy." *Buckley Nursing Home, Inc.* v. *Massachusetts Commn. Against Discrimination*, 20 Mass. App. Ct. 172, 183 (1985), quoting from *Jones* v. *Wayland*, 374 Mass. 249, 262 (1978).

*Judgment affirmed.*