WILLIAM O. APTHORP, executor,[1] *vs.* ONEBEACON INSURANCE GROUP, LLC; HENRY S. THOMPSON & others,[2] third-party defendants.

No. 09-P-1258.

Norfolk. March 16, 2010. - October 18, 2010.

Present: DUFFLY, COHEN, & MEADE, JJ.

*Insurance,* Amount of recovery for loss, Subrogation. *Subrogation.*

In a civil action involving a dispute over ownership of a recovered painting that had been one of several items stolen over thirty years earlier from the home of the owner of a homeowner's insurance policy, for which the defendant insurer had paid the maximum benefit under the policy, the judge properly concluded that the executor of the policy owner's estate was entitled to possession and full ownership of the painting upon reimbursement of the prorated benefit to the insurer, where the unambiguous terms of the agreement pursuant to which the insurer settled the claim conferred on the insurer a right of subrogation only, and not assignment of the policy owner's right to ownership; where the agreement permitted reimbursement of the amount paid for a particular loss, with no provision for equitable adjustment of such reimbursement based on the appreciation or depreciation of the property at the time of its recovery, or for payment of interest; and where there was nothing unfair about enforcing the terms of the agreement. [118-120]

CIVIL ACTION commenced in the Superior Court Department on July 31, 2007.

The case was heard by *E. Susan Garsh,* J., on motions for summary judgment.

*Stephen H. Lash* for OneBeacon Insurance Group, LLC.

*Frank J. Teague* for William O. Apthorp.

COHEN, J. In 1975, the Concord home of Helen S. Thompson was burglarized. Among the items stolen was a portrait that

---

[1]Of the estate of Helen S. Thompson.

[2]Sara A. Long, Hilary S. Hullah, Mary Frances Hiscock, and Cynthia S. Knauss.

recently had been appraised by a Boston art dealer at $25,000, but that had unique value to Thompson and her family. The portrait was painted in Italy, in 1765, by the artist Angelica Kauffmann,[3] and depicted Thompson's ancestors, John Apthorp and his two daughters. It was considered a family heirloom.

At the time of the burglary, Thompson was insured under a homeowner's policy issued by Northern Assurance Company (Northern), the predecessor in interest to the defendant, One-Beacon Insurance Group, LLC (OneBeacon). Among other things, the policy covered the loss of unscheduled personal property by theft, up to $32,500.

Thompson notified Northern of the burglary and submitted a document entitled "Claim and Affidavit," to which she attached a descriptive list of the stolen articles. The list enumerated several paintings (including the portrait), decorative furnishings, sterling silver, and jewelry. For some, but not all of the items, Thompson also provided estimated values, which totaled $65,000. The portrait was the only item that had an appraisal to establish its value.

Northern acknowledged that the total value of the stolen items was no less than the policy limit of $32,500, and agreed to pay that amount. As required by Northern, Thompson executed a document entitled "Sworn Statement in Proof of Loss and Subrogation Agreement" (Subrogation Agreement), dated January 19, 1977. The Subrogation Agreement recited that Thompson accepted the sum of $32,500 "in full release and satisfaction in compromise settlement" of her claim. Of relevance to this appeal, the Subrogation Agreement also contained the following preprinted language:

> "In consideration of the payment to be made hereunder, the assured does hereby subrogate to said insurer all right, title and interest in and to the property for which claim is being made hereunder, and agrees to immediately notify said insurer in case of any recovery of the property for which claim is being made hereunder, and will render all

---

[3]Angelica Kauffmann (1741-1807) was a Swiss painter who worked in Italy and England, painting primarily in the neoclassical style. She was a portraitist who also devoted herself to historical scenes and decorative work. Heller, Women Artists: An Illustrated History 56-58 (4th ed. 2003).

assistance possible in any endeavor to recover said property. Assured also agrees to turn over to said insurer, any such recovery which may be made, or reimburse said insurer in full to the extent of the payment for such property which may be recovered."

In March, 2007, the portrait was recovered when it came to the attention of an art dealer who consulted the Art Loss Register, an international database of missing works of art. On June 6, 2007, after the portrait had been turned over to the Concord police, OneBeacon gave notice that it was claiming ownership of the portrait by "salvage." Thompson having died, the plaintiff, William O. Apthorp, as executor of Thompson's estate, disputed OneBeacon's claim and sought to obtain the return of the painting to Thompson's estate by reimbursement of OneBeacon the amount of $25,000, the 1976 appraised value of the portrait and the presumed maximum amount that Northern had paid for that portion of Thompson's loss. OneBeacon refused, claiming that it had obtained full ownership of the portrait pursuant to the terms of the Subrogation Agreement. As of September, 2007, OneBeacon believed the portrait to have a minimum market value of $400,000 and a potential value at auction of as much as $800,000.

Apthorp then brought this lawsuit in the Superior Court, seeking a declaration that Thompson's estate is entitled to possession and ownership of the portrait upon reimbursing One-Beacon for the amount paid by Northern in settlement of Thompson's claim for this item. By way of counterclaim against Apthorp and third-party complaint against Thompson's heirs, OneBeacon also sought declaratory relief, alleging that under the terms of the Subrogation Agreement it is entitled to all right, title, and interest in the portrait.

On the parties' cross motions for summary judgment, the case was decided as matter of law on undisputed facts. In a thoughtful and thorough decision, the judge allowed the motions filed by Apthorp and the third-party defendant heirs and denied the motion filed by OneBeacon, declaring that Apthorp, as executor of Thompson's estate, was entitled to possession and full ownership of the portrait upon reimbursement of the sum of $25,000 to OneBeacon.

The judge's reasoning may be summarized as follows. By its unambiguous terms, the Subrogation Agreement did not assign title to any of the stolen property to Northern; it conferred a right of subrogation, which merely allowed Northern to exercise any rights that Thompson may have had against the party or parties responsible for the loss, to the extent of the payment Northern had made. Furthermore, the Subrogation Agreement expressly provided that, should any item of property be recovered, the insured was obliged to do one of two things: turn it over to the insurer *or* reimburse the insurer to the extent of the insurer's payment for such property. Here, Apthorp elected the second option, as he was entitled to do. Because the portrait had an appraised value of $25,000, and there was no evidence that the insurer, in paying the policy limit of $32,500, had paid a different amount in connection with that item, the extent of the payment made by the insurer for the portrait should be fixed at $25,000 — its full value at the time of loss. Finally, there was nothing in the Subrogation Agreement to support OneBeacon's contention that, if the estate were allowed to have possession and ownership of the portrait in exchange for reimbursing the amount paid by Northern, OneBeacon also should recover compound interest on that amount at an annual rate of ten percent.

We agree with the judge's analysis. The terms of the Subrogation Agreement are not ambiguous; accordingly, they "are to be construed according to their plain meaning." *Money Store/ Mass., Inc.* v. *Hingham Mut. Fire Ins. Co.*, 430 Mass. 298, 300 (1999).[4] The pertinent language states that by accepting payment from Northern, the insured did "hereby *subrogate* to said insurer all right, title and interest in and to the property for which claim is being made hereunder." Although OneBeacon would have us read the term "subrogate" to mean "assign" (a word which appears nowhere in the Subrogation Agreement), these terms are fundamentally different.

"Subrogation and assignment are not the functional equivalent

---

[4]Furthermore, even if the terms could be said to be ambiguous, we would construe them against the insurer as the drafter of the boilerplate language in question. See *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 804 (1980) (if policy language can be interpreted in more than one rational way, the insured is entitled to the benefit of the most favorable interpretation).

of each other." *Id.* at 302. Subrogation is not a direct transfer of ownership of property. Rather, "[i]t allows 'the substitution of one person in place of another . . . so that he who is substituted succeeds to the rights of the other.' " *East Boston Sav. Bank* v. *Ogan*, 428 Mass. 327, 329 (1998), quoting from *Provident Coop. Bank* v. *James Talcott, Inc.*, 358 Mass. 180, 188 (1970).

When an insurer settles a claim and thereby acquires a subrogation right, whether by agreement or by operation of law, it succeeds to any right of action that the insured may have against a third person whose negligence or wrongdoing caused the loss, and may recover the loss from that person on a pro tanto (to the extent of its payment) basis. See *New England Gas & Elec. Assn.* v. *Ocean Acc. & Guar. Corp.*, 330 Mass. 640, 659 (1953). See also *Liberty Mut. Ins. Co.* v. *National Consol. Warehouses, Inc.*, 34 Mass. App. Ct. 293, 296-297 (1993). In this way, the insured is prevented from obtaining a double recovery by accepting payment under the policy and then seeking to recover for the same loss from the third party. See *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240-241 (1970). By the same token, however, the insurer is prevented from obtaining a windfall, because its recovery from the third party is pro tanto, with any additional recovery belonging to the insured.

Suffice it to say that the term "subrogate" has long had an established meaning — to confer substituted rights against third parties — that has no application to the situation at hand. Had the insurer wished to condition its payment to Thompson on the actual transfer of ownership to the stolen property — so that the insurer would be its owner if it were recovered — it could have done so by means of an assignment to that effect. Here, however, because the agreement drafted by Northern conferred only a right of subrogation, the insurer did not acquire ownership, which remained in Thompson and her estate.

The judge's remaining rulings also are entirely correct. The plain and unambiguous language of the Subrogation Agreement anticipates the possible reacquisition of lost or stolen property and, by use of the word "or," provides that the insured may resort to either of two methods of compensating the insurer should that occur. See generally *Shabshelowitz* v. *Fall River*

*Gas Co.*, 412 Mass. 259, 263-264 (1992) (ordinary meaning of the word "or" is disjunctive). One alternative is that the insured may turn over the recovered property to the insurer; however, the second alternative — elected here by Apthorp — is that the insured may pay back the amount that the insurer paid for that particular loss. Furthermore, although OneBeacon would have it otherwise, the Subrogation Agreement contains no provision for equitable adjustment of the reimbursement amount based on either the appreciation or depreciation of the property at the time of its recovery; nor does it require the insured to pay interest. The judge correctly enforced the Subrogation Agreement according to its terms.

OneBeacon's final argument is that, notwithstanding the provisions of the Subrogation Agreement, it is entitled to obtain a greater recovery as a matter of "fairness." It suggests, for example, that the parties be deemed equal owners of the portrait and that OneBeacon be permitted to seek "partition." Contrary to OneBeacon's position, however, there is nothing unfair about enforcing the Subrogation Agreement. This agreement was drafted by its predecessor, Northern; Northern was in the business of assuming the risk of its insureds' losses; Northern had established and accepted what it considered to be an appropriate premium to assume the risk of loss of Thompson's personal property up to a limit of $32,500; and Northern (and later One-Beacon) had the use of Thompson's premium dollars since 1975, when Thompson acquired the policy. There is nothing unfair or inequitable in enforcing the bargain that was made.

The judge's rulings on the cross motions for summary judgment were proper. Accordingly, the judgment dismissing the counterclaim and the amended third-party complaint of One-Beacon and declaring that, upon reimbursement to OneBeacon of the sum of $25,000, Apthorp, as executor of Thompson's estate, is entitled to possession and full ownership of the portrait of John Apthorp and his two daughters painted by Angelica Kauffmann in 1765, is affirmed.

*So ordered.*