NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1641                                        Appeals Court

W. NANCY BRADY, executrix,[1] & another[2] vs.  CITIZENS UNION
SAVINGS BANK[3] & another.[4]

No. 14-P-1641.

Bristol.     June 1, 2015. - September 30, 2015.

Present:  Sullivan, Maldonado, & Massing, JJ.

Probate Court, Attorney's fees, Trust.  Trust, Attorney's fees.
    Practice, Civil, Attorney's fees.  Executor and
    Administrator, Attorney's fees.

Complaint in equity filed in the Bristol Division of the
Probate and Family Court Department on July 13, 2011.

The case was heard by Virginia M. Ward, J.

Philip J. Laffey for Dale Eggers.
Edwin F. Landers, Jr., for W. Nancy Brady.
Ben Nathan Dunlap for Edwin J. Haznar, Jr.

---

[1] Of the estate of Thomas T. Brady.

[2] Edwin J. Haznar, Jr., executor of the estate of Edwin J.
Haznar.

[3] The complaint names the bank in its capacity as bailee of
the assets of the Wilson O. Smith Trust.

[4] Dale Eggers.

MASSING, J.  Defendant Dale Eggers, a beneficiary of the William O. Smith Trust (the trust), appeals from a decree issued by a judge of the Probate and Family Court awarding attorney's fees, costs, and compensation for professional services to be paid to the plaintiffs from trust funds.  The plaintiffs' petition to the court claimed that their decedents (the trustees) had rendered legal and accounting services to the trust and had incurred expenses in their defense of a lawsuit that Eggers initiated against them in connection with their duties as trustees.  The amount of the award was nearly sixty percent of the value of the trust at the time of the petition.  While we do not reach the question of the reasonableness of the award, we remand the case for the judge to "undertake a more specific and searching analysis of the actual requests for fees and costs submitted than the record suggests took place." Matter of the Estate of King, 455 Mass. 796, 809 (2010) (King).

Background.  Eggers's father, Wilson O. Smith, established the trust in 1987.  Among the beneficiaries were Smith's wife, Betty Georgas (who was not Eggers's mother), Eggers, and Eggers's children.  In December, 2006, Eggers and one of her daughters initiated a lawsuit in the Probate and Family Court against the trustees, Thomas T. Brady and Edwin J. Haznar, alleging breach of fiduciary duty in their 1994 conveyance of a

Florida property out of the trust to Georgas (the prior action).

After nearly four years of litigation, on November 8, 2010, summary judgment entered in favor of the trustees. Among the grounds for judgment was that the prior action was barred by the statute of limitations because Eggers had actual notice of the alleged breaches of fiduciary duty more than three years before she filed the complaint. Eggers filed a notice of appeal from that judgment, but withdrew her appeal in 2011.

On July 13, 2011, the plaintiffs in the present matter filed a petition to recover for professional services rendered to the trust and for attorney's fees, costs, and professional services incurred by the trustees in connection with their successful defense of the prior action. See note 8, infra. The plaintiffs relied on the provisions of G. L. c. 206, § 16,[5] and

---

[5] At the time the fee petition was submitted, G. L. c. 206, § 16, as appearing in St. 1949, c. 140, provided, in relevant part:

> "An executor, administrator, guardian, conservator or trustee shall be allowed his reasonable expenses, costs and counsel fees incurred in the execution of his trust, and shall have such compensation for services as the court may allow."

This statute was since repealed as of March 31, 2012. St. 2008, c. 521, §§ 38, 44, as amended by St. 2010, c. 409, § 23, and St. 2011, c. 224. See now §§ 708, 709, 805, 811, and 816(15), (24) of the Massachusetts Uniform Trust Code, G. L. c. 203E, inserted by St. 2012, c. 140, § 56.

G. L. c. 215, § 39B,[6] and on the terms of the trust.[7]  Attached to the petition were invoices totaling $457,902.09 and affidavits describing the services rendered and the fees and costs incurred.[8]  On October 20, 2012, the same judge who had

---

[6] General Laws c. 215, § 39B, as appearing in St. 1975, c. 400, § 70, provides in pertinent part:

> "When a judgment or decree is entered in a contested proceeding seeking equitable relief or on an account or to determine the construction of a will or of any trust instrument . . . the probate court may, in its discretion as justice and equity may require, provide that such sums as said court may deem reasonable be paid out of the estate in the hands of such fiduciary to any party to the proceeding on account of counsel fees and other expenses incurred by him in connection therewith" (emphasis supplied).

See G. L. c. 215, § 45 (authorizing discretionary awards of costs and expenses in contested Probate and Family Court cases "as justice and equity may require").

[7] The trust instrument authorizes the trustees to use the assets of the trust "[t]o employ and pay reasonable compensation and expenses of investment counsel, legal counsel, accountants, agents or others for any of the purposes hereto."

[8] W. Nancy Brady, as executrix, claimed attorney's fees and costs under G. L. c. 206, § 16, and G. L. c. 215, § 39B, for her decedent's defense against Eggers's suit in the amount of $186,971.88.  In addition, she claimed $35,475.77 under G. L. c. 206, § 16, and the terms of the trust, "in connection with execution of the Trust and making a successful defense against [Eggers's suit]," including a $5,000 insurance deductible paid to the law firm retained to defend the trustee against Eggers's suit.

Edwin J. Haznar, Jr., as executor, claimed attorney's fees and costs under G. L. c. 206, § 16, and G. L. c. 215, § 39B, for his decedent's defense against Eggers's suit in the amount of $171,854.44.  In addition, he claimed $63,600 under G. L. c. 206, § 16, and the terms of the trust, for his decedent's

decided the prior action held a nonevidentiary hearing on the petition, and on April 11, 2013, she issued a single-page decree ordering payment from the trust in the full amount requested in the petition, giving no explanation for the award.

Discussion. 1. Timeliness. Eggers contends initially that the plaintiffs are not entitled to reimbursement for expenses associated with the defense of the prior action because they did not file their petition until after judgment in the prior action had entered. This contention is without merit. See Paone v. Gerrig, 362 Mass. 757, 762 (1973), citing G. L. c. 206, § 16; G. L. c. 215, § 39A; and Condon v. Haitsma, 325 Mass. 371 (1950).

2. Reasonableness of the award. Eggers argued below that the expenses requested in the petition, $457,902.09, accounted for nearly sixty percent of the trust assets of $778,645.84 as of February 28, 2011. She also argued that the fees were excessive given the nature of the litigation, and that the services rendered were duplicative or insufficiently documented. Although the judge presided over the prior action and was capable of determining, based on first hand observation, many factors bearing on the reasonableness of the fees sought, see King, 455 Mass. at 805-806, and cases cited, on the record

"accounting services . . . in connection with the administration of the Trust and making a successful defense against [Eggers's suit]."

before us, we are unable to determine the reasonableness of the award.  See T. Butera Auburn, LLC v. Williams, 83 Mass. App. Ct. 496, 504 (2013).

"An important factor in assessing the reasonableness of fees awarded in probate cases is the size of the estate." Clymer v. Mayo, 393 Mass. 754, 772 (1985).  To ensure that the judge takes this "long-standing principle," ibid., into account, and to "prevent the fund from being either entirely or in great part absorbed by counsel fees," ibid., quoting from Frost v. Belmont, 6 Allen 152, 165 (1863), where, as here, fees are to be paid for the services of those "'who may not have been employed by those whose estates are thus diminished,' they are to be awarded on 'strictly conservative principles,'" Clymer v. Mayo, supra at 773, quoting from Holyoke Natl. Bank v. Wilson, 350 Mass. 223, 230 (1966).

Additional factors for the judge to consider are well settled.  See Cummings v. National Shawmut Bank, 284 Mass. 563, 569 (1933); Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979); Clymer v. Mayo, 393 Mass. at 773; King, 455 Mass. at 807-808.  These include factors bearing on the reasonableness of the hourly rate, such as "the ability and reputation of the attorney," the demand for the attorney's services, and the rate charged for similar services by other attorneys in the same community.  King, supra at 807, quoting from Cummings v.

National Shawmut Bank, supra.  Other factors to be considered
are "the time spent, . . . the amount of money or the value of
the property affected by controversy, and the results secured."
Ibid., quoting from Cummings v. National Shawmut Bank, supra.
"Particular attention should be given to the necessity for the
services and to the extent of duplication of effort involved."[9]
Chase v. Pevear, 383 Mass. 350, 374 (1981).  As noted supra, the
judge in this case must also consider the amount of the award in
proportion to the size of the estate, although no single factor
is decisive of what is to be considered fair and reasonable
compensation.  King, supra.

We recognize that the judge has wide discretion in
determining an appropriate fee award.  See Chase v. Pevear, 383
Mass. at 371; King, 455 Mass. at 809.  See also WHTR Real Estate
Ltd. Partnership v. Venture Distrib., Inc., 63 Mass. App. Ct.
229, 235 (2005).  Here, however, the judge made no findings that
would allow us to determine whether she properly exercised that
discretion by evaluating the relevant factors through a
conservative lens.

_____

[9] In this regard, we note that the plaintiffs requested
payment for services that each trustee (one an attorney, the
other an accountant) personally provided in defense of the prior
action, as well as attorney's fees and costs that each trustee
incurred in that defense.  See note 8, supra.  The judge's
review for necessity and duplication of services should include,
but not be limited to, any overlap of these claimed expenses.

3.  Collateral sources.  Eggers further argues that because the trustees' insurers apparently paid most of the attorney's fees associated with their defense of the prior action, the plaintiffs should not be allowed to recover defense costs exceeding the trustees' personal out-of-pocket expenses.  We do not agree that the trustees' insurance coverage bars the plaintiffs from recovering for the expenses incurred in the trustees' defense of the prior action.  However, the insurance coverage is yet another factor the judge should consider on remand in awarding fees and costs "in [her] discretion as justice and equity may require."  G. L. c. 215, § 39B, as appearing in St. 1975, c. 400, § 70.

In many contexts in which fee awards are authorized, the party entitled to fees is permitted to recover notwithstanding the fact that the party is not personally responsible for payment of those fees.  See, e.g., Northern Assocs. v. Kiley, 57 Mass. App. Ct. 874, 877-878 (2003) (where commercial lease provided for payment of "attorney[']s fees incurred," fees awarded even though attorney had not yet billed or received payment.  "Incurring a fee is to be distinguished from paying a fee[, . . . and w]hether a party ultimately pays the fees for which he has obligated himself . . . is not determinative").  Cf. Darmetko v. Boston Hous. Authy., 378 Mass. 758, 763-764 (1979) (mandatory fees under G. L. c. 186, § 14, payable to

publicly funded legal services organization representing prevailing tenant at no cost); <u>Torres</u> v. <u>Attorney Gen</u>., 391 Mass. 1, 14 (1984) (same, with respect to suit under Fair Information Practices Act, G. L. c. 214, § 3B).

Recently in <u>Polay</u> v. <u>McMahon</u>, 468 Mass. 379, 389 (2014), the Supreme Judicial Court rejected the contention that the fee-shifting provision of the anti-SLAPP statute, G. L. c. 231, § 59H, did not apply where the prevailing party's liability insurer paid for its defense. The court reasoned that applying the fee-shifting provision in these circumstances advanced the statutory goals of protecting petitioning activity and promoting prompt resolution of "SLAPP" litigation. <u>Ibid</u>. The court further observed, "Nothing about the statutory term 'incurred' precludes application of the fee-shifting provision where the fees were 'incurred' by a third party acting on a defendant's behalf." <u>Ibid</u>.

Other jurisdictions also hold that when a party entitled to recover attorney's fees has insurance coverage for those fees, this fact does not bar recovery. These decisions rely on two alternative rationales for the proposition that "an award of attorney fees is not necessarily contingent upon an obligation to pay counsel." <u>Ed A. Wilson, Inc</u>. v. <u>General Servs. Admn</u>., 126 F.3d 1406, 1409 (Fed. Cir. 1997).

One line of cases applies the "benefit of the bargain"

rationale of the collateral source rule;[10] that is, "the plaintiff who contracts for insurance with his or her own funds should receive that benefit" without the other party using it to offset a claim for expenses. Fust v. Francois, 913 S.W.2d 38, 47 (Mo. Ct. App. 1995), citing Washington v. Barnes Hosp., 897 S.W.2d 611, 619 (Mo. 1995). "The policy underlying [this] rule focuses on the inherent unfairness of improving the defendant's position through consideration of payments made independently to the plaintiff." State ex rel. Owners Ins. Co. v. McGraw, 233 W. Va. 776, 784 (2014) (Davis, C.J., concurring) (citation omitted).

The second line of cases rests on a broad interpretation of what it means to "incur" expenses. "[A]ttorney fees are incurred by a litigant 'if they are incurred in his behalf, even though he does not pay them.' . . . [T]he insured can be viewed as having incurred legal fees insofar as [it has] paid for legal services in advance as a component of [its] . . . insurance

---

[10] In tort cases, the common-law collateral source rule provides that "the value of reasonable medical expenses that an injured plaintiff would be entitled to recover from the tortfeasor as a component of her compensatory damages is not to be reduced by any insurance payments or other compensation received from third parties by or on behalf of the injured person." Law v. Griffith, 457 Mass. 349, 355 (2010) (citation omitted). The collateral source rule promotes deterrence by not allowing the tortfeasor "to benefit from either contractual arrangements of the injured party with insurers or from any gifts from others intended for the injured party." Ibid.

premiums." Ed A. Wilson, Inc. v. General Servs. Admn., 126 F.3d at 1409-1410, quoting from Goodrich v. Department of the Navy, 733 F.2d 1578, 1579 (Fed. Cir. 1984). See State ex rel. Owners Ins. Co. v. McGraw, 233 W. Va. at 785 (Davis, C.J., concurring) (majority rule is that "in a tort action arising from an underlying action, a plaintiff may recover attorney's fees paid . . . by an insurance company in the underlying action").

Under this rationale, a party incurs "the costs of litigation, including reasonable attorney's fees, when that party acts in response to a claim brought against him or her by marshaling financial and human resources. . . . Having insurance to pay those expenses is merely one way of discharging the litigant's obligation or liability; it is a way of financing the costs." Worsham v. Greenfield, 435 Md. 349, 357-358 (2013). See Graco, Inc. v. CRC, Inc. of Tex., 47 S.W.3d 742, 744-746 (Tex. Ct. App. 2001) (under statute providing for manufacturers' indemnification of sellers, seller incurred compensable loss when insurer retained legal counsel to defend products liability action on seller's behalf). See also Torres v. Attorney Gen., 391 Mass. at 14-15 (plaintiff represented by legal services organization "incurred" attorney's fees even though he had no obligation to pay for services). Compare Northern Assocs. v. Kiley, 57 Mass. App. Ct. at 878.

Accordingly, the trustees' insurance coverage does not

preclude recovery of their reasonable fees and expenses in the defense of the prior action. We note, however, that an award of fees under G. L. c. 215, § 39B, should not be viewed as automatic.[11] Rather, in matters relating to wills, estates, and trusts, the discretion vested in the trial judge to depart from the usual "American rule" that the parties are responsible for their own fees "require[s] a reason, grounded in equity, why an award shifting fees should be made." King, 455 Mass. at 805. On remand, in addition to the factors enumerated in part 2 supra, the judge should take the trustees' insurance coverage into account, giving it as much or as little weight as the judge deems appropriate, in arriving at a just and equitable award.

Conclusion. We vacate the decree allowing the plaintiffs' petition and remand the matter to the Probate and Family Court for further proceedings in accordance with this opinion.

So ordered.

---

[11] The relevant considerations are the same whether the award is made under the judge's statutory authority or under the trust instrument. See notes 5 through 7, supra. Awards of counsel fees and expenses to trustees and others rendering services to the trust "generally lie in the discretion of the Probate Court." Chase v. Pevear, 383 Mass. at 371. The language of the trust instrument, permitting "reasonable compensation" for expenses incurred "for any of the purposes hereto" echoes the relevant statutory provisions, and the plaintiffs make no argument that the trust instrument provides a broader entitlement.