NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1625                                        Appeals Court


 BUNKER HILL INSURANCE COMPANY[1]  vs.  G.A. WILLIAMS & SONS, INC.[2]


                       No. 17-P-1625.

       Norfolk.      October 9, 2018. - December 13, 2018.

            Present:  Meade, Sullivan, & McDonough, JJ.



Damages, Mitigation, Remittitur.  Insurance, Homeowner's
     insurance, Amount of recovery for loss, Subrogation.
     Subrogation.  Practice, Civil, Damages.




     Civil action commenced in the Superior Court Department on
August 12, 2013.

     The case was tried before Rosalind H. Miller, J.;
postverdict motions to offset the jury award and for attorney's
fees and costs were heard by her; and judgment was entered by
her.


     Scott E. Regan for the defendant.
     Anna K. Bennett for the plaintiff.


     MEADE, J.  The defendant, G.A. Williams & Sons, Inc.

(Williams), appeals from a judgment entered in Superior Court

_____

     [1] As subrogee of Shirley Gilbody.

     [2] Doing business as Williams Coal & Oil Co.

following the denial of its motion to offset the jury award in this tort action brought against it by Bunker Hill Insurance Company (Bunker Hill), as subrogee of Shirley Gilbody, with the remediation costs paid by its insurer to Bunker Hill pursuant to an earlier declaratory judgment action. The motion judge determined that the earlier payment was from a collateral source and, as such, was not required to be offset against the jury verdict. Judgment entered against the defendant in the full amount of the jury verdict. Because the source of the offset was not collateral to the defendant, we determine that the defendant's motion for offset of damages should have been allowed, and we modify the judgment accordingly.[3]

Background. This case arises from an oil spill on property owned by Shirley Gilbody and insured by a homeowner's insurance policy purchased by her and issued by Bunker Hill. Williams installed an oil tank in Gilbody's home in 2003 and, at all material times, was the oil service company for Gilbody. The oil spill occurred in April, 2012. Williams had purchased and paid the premiums for an insurance policy with International Insurance Company of Hannover, Ltd. (Hannover). The parties do

---

[3] The judge's order also determined that Bunker Hill was entitled to its attorney's fees and costs pursuant to G. L. c. 21E, and judgment entered accordingly. Because Bunker Hill was the prevailing party at trial, we do not disturb the judgment as it applies to the attorney's fees and costs. See G. L. c. 21E, § 4A (d).

not dispute that the policy was in effect at all times material to this case. The Hannover policy covered, as an insured location, the property owned by Gilbody.

When the oil spill occurred, Gilbody notified her insurer, Bunker Hill. Bunker Hill paid for the full remediation of the property, $262,894.05, under a reservation of rights. Pursuant to a declaratory judgment action, Bunker Hill sought compensation from Hannover for damage to the insured location, Gilbody's property. In that declaratory judgment action, a Superior Court judge determined that both the Bunker Hill policy and the Hannover policy covered Gilbody's property, that each policy contained "other insurance clauses," and that these clauses were mutually repugnant. See Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492 (1988). The judge determined that each insurer would bear fifty percent of the cost of remediation of Gilbody's property. A declaratory judgment entered, and Hannover reimbursed Bunker Hill for fifty percent of the cost of remediation, $131,447.03.

In 2012, Bunker Hill, as subrogee to its insured, Gilbody, also filed the present action against Williams for negligence, breach of contract, and violation of G. L. c. 21E (negligence action).[4] After trial, the jury rendered a negligence verdict in

---

[4] The breach of contract count was dismissed at the commencement of trial.

favor of Gilbody in the full amount of the cost of the remediation of the property, $262,894.05.[5] Williams then filed its motion to offset the amount of damages in the negligence action by the amount that Bunker Hill had received pursuant to Williams's insurance policy with Hannover in the declaratory judgment action, $131,447.03.

Bunker Hill sought entry of judgment for the full amount of the jury verdict arguing that the payment to it from Hannover on the declaratory judgment was made pursuant to the remediation coverage in Williams's insurance policy that insured Gilbody and, therefore, was a payment from a source collateral to the judgment in the negligence action against Williams. The judge agreed with Bunker Hill and determined that because the claims were "analytically different," the collateral source rule applied and precluded an offset. Judgment entered in the full amount of the jury verdict.

Discussion. "The measure of damages is a question of law reviewed de novo on appeal, see Burke v. Rivo, 406 Mass. 764, 764-765 (1990) (proper measure of damages recoverable in tort is question of law), but the amount of damages awarded is a factual issue reviewed on appeal under an abuse of discretion standard. See Bartley v. Phillips, 317 Mass. 35, 43 (1944)." Twin Fires

---

[5] The jury also found a violation of G. L. c. 21E.

Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 424 (2005). Here, we determine that the damage award in this case is the result of an error of law; we order the modification of judgment to reflect the offset. See Brown v. Leighton, 385 Mass. 757, 758 (1982) ("counsel agreed that whether the defendant was entitled to credit toward any verdict to the extent of the plaintiff's recovery against a third party was a question of law").

"When an insurer settles a claim and thereby acquires a subrogation right, whether by agreement or by operation of law, it succeeds to any right of action that the insured may have against a third person whose negligence or wrongdoing caused the loss, and may recover the loss from that person on a pro tanto (to the extent of its payment) basis." Apthorp v. OneBeacon Ins. Group, LLC, 78 Mass. App. Ct. 115, 119 (2010), citing New England Gas & Elec. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953); Liberty Mut. Ins. Co. v. National Consol. Warehouses, Inc., 34 Mass. App. Ct. 293, 296-297 (1993). Because Bunker Hill paid for the remediation of its insured's damaged property, it is entitled to seek subrogation for the payments it made to Gilbody. Apthorp, supra. Bunker Hill argues that because it paid the full amount of the remediation, $262,894.05, it is entitled in subrogation to that amount in the

negligence action.[6] Bunker Hill also asserts that no offset is required because the payment from Hannover was not in relation to any negligence on the part of Williams -- it was for property remediation under a section of the insurance policy that did not imply fault on the part of the insured; consequently, the collateral source rule precluded an offset in the present action. Although we agree that Bunker Hill is entitled to subrogate its claim, an offset is required under these facts.

As a general rule, "a tortfeasor's liablity to an injured person shall not be reduced by the amount of compensation received by the injured person pursuant to an insurance policy" (quotation omitted). Short v. Marinas USA Ltd. Partnership, 78 Mass. App. Ct. 848, 857 (2011). "In terms of operation, the collateral source rule has both a substantive aspect that relates to the law of damages, and an evidentiary component that governs what types of evidence may be admitted in evidence at

---

[6] However, "the insurer is prevented from obtaining a windfall, because its recovery from the third party is pro tanto, with any additional recovery belonging to the insured" (emphasis supplied). Apthorp, supra. In the appellee's brief and at oral argument, counsel for Bunker Hill asserted that any excess recovery would remain with Bunker Hill, and not with Gilbody. In light of our conclusion, we need not reach the issue. We do note that payment of both the insured's negligence damages and Gilbody's remediation costs would require Hannover/Williams to pay 150 percent of the remediation costs, a counterintuitive result that is not required by the collateral source rule and would punish Williams for having the foresight to purchase a policy that covered not only its own negligence but the property of its customer, Gilbody.

trial." Law v. Griffith, 457 Mass. 349, 355 (2010).[7] This case relates to the substantive aspect of the rule as it concerns whether the rule applies to an offset of insurance proceeds paid to Bunker Hill as Gilbody's homeowner insurer. "One line of cases applies the 'benefit of the bargain' rationale of the collateral source rule; that is, 'the plaintiff who contracts for insurance with his or her own funds should receive that benefit' without the other party using it to offset a claim for expenses" (citation omitted; footnote omitted). Brady v. Citizens Union Sav. Bank, 88 Mass. App. Ct. 416, 421 (2015).

By claiming that the insurance payment for the property remediation pursuant to the declaratory judgment is collateral because it is based on the insurance contract that covered Gilbody as an insured, Bunker Hill argues that the nature of the payment is collateral to the damages award in the jury verdict that found Williams negligent. In support of this argument, Bunker Hill relies on Boyle v. Zurich Am. Ins. Co., 472 Mass. 649 (2015); Law, 457 Mass. 349; Short, 78 Mass. App. Ct. 848;

---

[7] The judge here correctly kept the information regarding the payment from the jury. "The rationale behind this so-called 'collateral source rule' is that receipt of such income does not lawfully reduce the plaintiffs' damages, 'yet jurors might be led by the irrelevancy to consider plaintiffs' claims unimportant or trivial or to refuse plaintiffs' verdicts or reduce them, believing that otherwise there would be unjust double recovery.'" Scott v. Garfield, 454 Mass. 790, 800-801 (2009), quoting Corsetti v. Stone Co., 396 Mass. 1, 17 (1985).

and Palochko v. Reis, 67 Mass. App. Ct. 103, 108 (2006).
However, that reliance is misplaced.  Because Williams, not
Gilbody, procured the Hannover policy to cover Gilbody's
property, there is no unfairness in allowing Williams to offset
the damage award by the amounts paid by Hannover.  As discussed
below, the cases relied on by Bunker Hill are factually distinct
from the facts of this case.

In Boyle, the plaintiff sought damages for injuries
sustained by the plaintiff when a tire exploded in a tire shop
owned by C&N Corporation (C&N).  The plaintiffs, Boyle and his
wife, sued C&N, whose insurer, Zurich American Insurance Company
(Zurich), refused to defend the lawsuit against its insured.
Id. at 650.  After C&N defaulted in the lawsuit and then
negotiated a settlement of damages with the Boyles that included
an assignment of rights against Zurich, the Boyles sued Zurich
for a failure to settle their individual claims after liability
had become reasonably clear, and for a breach of the duty to
defend C&N.  Id.  The Boyles settled with Zurich on their
individual claims against it and released Zurich from any claims
they had in their individual capacities.  Id. at 652.  On the
remaining claim for Zurich's breach of the duty to defend, the
judge determined that Zurich breached its duty but also
determined that the settlement amount the Boyles received
pursuant to their release of the claims in their individual

capacities would be deducted from the damages awarded for the breach of the duty to defend that Zurich owed C&N.[8]  Id. at 653. On appeal, the Supreme Judicial Court held that this offset was error because "[t]he crux of the Boyles' individual claims was that Zurich had wronged them as third-party beneficiaries of C&N's policy by failing to settle the Boyles' suit when liability had become reasonably clear.  This wrong . . . is analytically independent of the wrong that supported C&N's claim against Zurich (assigned to the Boyles) -- i.e., Zurich did not provide C&N with a defense."  Id. at 663.  Thus, the claims asserted by the Boyles were two distinct claims, effectively by two distinct plaintiffs:  the claims asserted by them individually for the injuries sustained that Zurich did not settle when liability was reasonably clear, and the claims asserted as assignees of C&N for Zurich's failure to defend it in the lawsuit filed by the Boyles.  The holding in Boyle is inapt to our facts.

Bunker Hill's argument that Short, 78 Mass. App. Ct. 848, applies is also without merit.  In Short, the plaintiff sued the marina where his boat was stored when a fire on an adjacent boat

---

[8] The Boyles also raised a claim for violation of G. L. c. 93A.  The judge determined, and the Supreme Judicial Court agreed, that the Boyles were not entitled to c. 93A damages because, as the judge found, there was no evidence of an unfair or deceptive act on Zurich's part.

spread to his boat.[9]  Id. at 849.  Short also sued the owner of the boat where the fire started and the insurance broker for that boat owner, Old Harbor Insurance Agency (Old Harbor), for failure to procure adequate liability insurance for the owner, "a negligent act which allegedly prevented Short, as a third-party beneficiary, from receiving compensation."  Id.  Short settled with Old Harbor.  Id.  In a similar claim, Short sued his own insurer and insurance broker for failure to obtain sufficient insurance on his own boat.  He settled with his insurance broker and was successful in his coverage litigation against his insurer.  His insurer reserved its subrogation rights against the other boat owner.  Id.

The marina sought to offset the amounts Short had received from his broker and from Old Harbor.  This court held that the settlement from Short's broker was "to compensate Short for the expense incurred to establish coverage and obtain insurance proceeds; this is clearly a separate cause of action and seeks damages separate from those caused by the fire.  The judge was correct in declining the request for offset."  Id. at 858.  The payment from Short's broker was based on his contract with the broker and his insurer, negotiated by and with the premiums paid by Short.

---

[9] Ultimately, Short obtained a judgment against the marina for $83,250 in damages.  Short, 78 Mass. App. Ct. at 851.

The payment from Old Harbor was on a different footing as a payment from a noncollateral source. "[T]he purpose of [Old Harbor's] payment to Short was essentially compensation for the damage caused by the fire. Thus it was error to fail to offset the plaintiff's recovery by that portion of the . . . settlement attributable to such damages." Id. at 859. The payment from Old Harbor was required to be offset from the plaintiff's recovery because the payment was from the insurance broker of one of the tortfeasors, on behalf of that tortfeasor, in compensation for the damage its customer caused the plaintiff.[10] The rule discussed in Short does not assist Bunker Hill.

Bunker Hill's reliance on Palochko, 67 Mass. App. Ct. 103, is similarly misplaced. In Polochko, the defendant's workers caused an oil tank to fall over and seep oil onto the plaintiff's property. Id. at 104-105. The plaintiff received a payment toward the clean-up costs from his own insurer. Id. at 108. The defendant sought to have the negligence damages assessed against him reduced by those payments. There, relying on Buckley Nursing Home, Inc. v. Massachusetts Comm'n Against

---

[10] Moreover, as noted in Short, "[w]hen evaluating whether a source is collateral, our determination depends upon 'the purpose and nature of the . . . [payments]' and not merely . . . their source. Russo v. Matson Nav. Co., 486 F.2d 1018, 1020 (9th Cir. 1973), quoting from Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534 (9th Cir. 1962)." Id. at 859 n.12.

<u>Discrimination</u>, 20 Mass. App. Ct. 172, 183 (1985), this court held that "[a]s a general rule, a tortfeasor's liability to an injured person shall not be reduced by the amount of compensation received by an injured person pursuant to an insurance policy." <u>Polochko</u>, <u>supra</u>, quoting <u>Buckley</u>, <u>supra</u>. Because the payment here was made pursuant to the coverage available as a result of Hannover's policy covering Gilbody's property, Bunker Hill maintains that the insurance payment it received by way of the declaratory judgment does not reduce the damages assessed pursuant to the negligence judgment. This reasoning is faulty, however, because Gilbody did not contract for the remediation coverage provided by the Hannover policy, Williams did.

Furthermore, Bunker Hill's reliance on <u>Law</u>, 457 Mass. 349, does not assist its claim. As stated in <u>Law</u>, "The purpose of the collateral source rule is tort deterrence. The tortfeasor is required to compensate the injured party for the fair value of the harm caused, and is not to benefit from either contractual arrangements of the injured party with insurers or from any gifts from others intended for the injured party." <u>Id</u>. at 355. The Hannover policy was purchased by Williams and insured Gilbody's property. The Hannover policy paid a contribution to the remediation of Gilbody's property pursuant to the declaratory judgment, and Bunker Hill received the

benefit of that payment. The benefit received by Bunker Hill on behalf of Gilbody was not from a policy purchased by her for her own protection. See id. (defendant is "not to benefit from . . . contractual arrangements of the injured party with insurers"). Rather, it came from a policy purchased by the tortfeasor, Williams.

In the final analysis, the payment from Hannover was a payment from the same source as the tortfeasor because the compensation received by Bunker Hill was from a source with which the wrongdoer, not the homeowner, contracted.[11] Here, neither Gilbody nor Bunker Hill contracted for, or paid for, the property remediation coverage provided by Hannover to Gilbody's property. That coverage was extended through the Hannover policy purchased by and with premiums paid by Williams. See, e.g., Arthur v. Catour, 216 Ill. 2d 72, 79 (2005) (damages received by plaintiff from defendant not decreased by amount

---

[11] Compare, e.g., Reilly v. United States, 863 F.2d 149, 165 n.13 (1st Cir. 1988) (the collateral source rule "generally allows recovery against a wrongdoer for the full amount of damages even though the injured party is also compensated for some or all of the same damages from a different source independent of the tortfeasor [and whose payment, therefore, is 'collateral' to him]"). Compare also Overton v. United States, 619 F.2d 1299, 1306 (8th Cir. 1980) ("The rule permits recovery against a wrongdoer for the full amount of damages even though the plaintiff is also compensated from a different source (such as an insurance company) which is 'wholly independent' of the wrongdoer and whose payment is therefore collateral to his"); Helfend v. Southern Cal. Rapid Transit Dist., 2 Cal. 3d 1, 6 (1970).

plaintiff received from insurance proceeds where defendant did not contribute to payment of insurance premiums); 22 Am. Jur. 2d Damages § 405 (2013) ("The 'collateral source rule' provides that a payment made to an injured party as compensation for injuries from a source wholly independent of the tortfeasor should not be deducted from the damages that the plaintiff would otherwise collect from the tortfeasor" [emphasis added]). Similarly, "[a] payment made by one acting for a tortfeasor to someone whom the tortfeasor has injured is a credit against the tortfeasor's liability. Such payment may come under an insurance policy maintained by the defendant, whether made under a liability provision or without regard to liability" (emphasis added; footnote omitted). Id. at § 400.

Conclusion. Where Williams has established that it purchased an insurance policy from Hannover that provided coverage for Gilbody's premises as an insured location, and that policy paid to Bunker Hill on behalf of Gilbody the amount of $131,447.03 for remediation of the property after the oil spill, we hold that the source of the payment from Hannover for Gilbody's property remediation under the policy issued to Williams is from the same source as the negligence damages assessed against Williams and is not collateral to Williams. Williams is entitled to an offset in the amount of the payment

from Hannover to Bunker Hill for the remediation of Gilbody's property.

The judgment is to be modified by reducing the award of damages by $131,447.03 and by also reducing the award of prejudgment interest to correspond with the modified damage award.  As so modified, the judgment is affirmed.

So ordered.